**In re Brian M. and Wendy L. GREER, Debtors.**

**Bankruptcy No. 98–34378.**

United States Bankruptcy Court, N.D. Ohio.

Oct. 15, 1999.

Howard A. Elliott, Findlay, OH, for debtors.

Louis J. Yoppolo, Toledo, OH, trustee.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Chapter 7 Trustee's Motion to have the Debtor, Wendy Greer, "Turnover" certain property that she became entitled to receive as the result of a divorce that occurred between her and the other Debtor to this action, Brian M. Greer. On April 27, 1999, a Hearing was held on the matter at which time the Chapter 7 Trustee sought leave from the Court to file a Motion for Summary Judgment, and in accordance with Bankruptcy Rule 9014, the Court granted the Trustee's request. Thereafter, on July 8, 1999, the Court received the Trustee's Summary Judgment Motion along with a Memorandum in Support thereof, and on July 29, 1999, legal counsel for Wendy Greer submitted to the Court a Response Memorandum in opposition to the Chapter 7 Trustee's Motion for Summary Judgment. The Court has now reviewed these Memorandum and the arguments and exhibits contained therein, as well as the entire record of the case. Based upon that review, and for the reasons set forth below, the Court finds that the Trustee's Motion for Summary Judgment should be Granted in part and Denied in part.

## FACTS

The facts of this case, and the arguments presented by the Parties, can be briefly summarized as follows: On October 5, 1998, the Debtors, Brian and Wendy Greer, who were in the midst of a divorce, filed in this Court a joint petition for relief under Chapter 7 of the United States Bankruptcy Code. In their joint bankruptcy petition, the Debtors' claimed as exempt, under O.R.C. § 2329.66(A)(10)(b), an interest in a 401(k) Plan that Brian Greer maintained at his place of employment. No objection to this exemption was ever lodged by the Chapter 7 Trustee (hereinafter "Trustee").

On November 25, 1998, as a part of the divorce proceeding that was pending between the Debtors, an Ohio State Court Magistrate rendered a "Decision" whereby it was determined that Wendy Greer would be entitled to a one-half (½) interest in the 401(k) Plan that Brian Greer maintained through his employment. In addition, the state court Magistrate also determined that Wendy Greer was entitled to a one-half (½) interest in an earned, but as of yet undistributed, COLA payment due from Brian Greer's employer. This division of the Debtors' property was subse-

quently adopted by the state court with jurisdiction over the Debtors' divorce through a decree entered on May 14, 1999. However, prior to the entry of this decree, the Trustee, as the result of the "Decision" rendered by the state court magistrate, filed a Motion, pursuant to 11 U.S.C. § 542, to have Wendy Greer "Turnover" any and all property that she would become entitled to receive through the Debtors' divorce.

In support of this action, the Trustee, through his Motion for Summary Judgment, puts forth the following legal arguments: First, the Trustee argues that as a result of the "Decision" rendered by the state court magistrate, Wendy Greer's bankruptcy estate acquired an interest in Brian Greer's 401(k) Plan and COLA Account pursuant to 11 U.S.C. § 541(a)(5)(B) which allows property acquired by a debtor/spouse within 180 days of the filing of the bankruptcy petition to be included as property of the bankruptcy estate if such property was received on account of "an interlocutory or final divorce decree." Second, the Trustee argues that regardless of Brian Greer's potential exemption under Ohio law in the 401(k) Plan, Wendy Greer is not entitled to claim such an exemption because upon the state court awarding Wendy Greer a one-half (½) interest in the 401(k) Plan, any exempt status that the property may have enjoyed was then lost.

Wendy Greer, through her legal counsel, however, objects to these arguments based upon the following legal grounds: First, Wendy Greer maintains that she did not acquire an interest in Brian Greer's property as a result of the "Decision" rendered by the state court Magistrate based on the fact that magistrates lack the authority, under Ohio law, to issue orders and final judgments. Instead, Wendy Greer asserts that she only acquired an interest in Brian Greer's property when the actual divorce decree was entered by the state court, but as this occurred more than 180 days after the filing of the Debtors' bankruptcy petition, her bankruptcy estate did not obtain

an interest in the property pursuant to 11 U.S.C. § 541(a). Second, Wendy Greer asserts that even if her bankruptcy estate is found to have an interest in the 401(k) Plan, her interest in the Plan is exempt under Ohio law.

### LAW

Section 541 of the Bankruptcy Code provides in pertinent part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree[.]

### DISCUSSION

Orders to turn over property of the estate, and determinations concerning a debtor's entitlement to exemptions are core proceedings per 28 U.S.C. § 157(b). Thus, this case is a core proceeding.

The Trustee's Motion for Turnover is now before the Court upon the Trustee's Motion for Summary Judgment. The standard for a summary judgment motion is set forth in Fed.R.Civ.P. 56, which is made applicable to this proceeding by Bankruptcy Rule 7056, and provides in pertinent part: A movant will prevail on a motion for summary judgment if, "the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail, the movant must demonstrate all the elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir.1975). However, upon the moving party meeting the foregoing burden, the nonmoving party may not thereafter rest on his pleadings, but must instead set forth specific facts demonstrating that, in fact, there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making the determination of whether the parties have met their respective burdens, the Court is directed to view all facts in the light most favorable to the party opposing the summary judgment motion. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also In re Bell,* 181 B.R. 311 (Bankr.N.D.Ohio 1995).

■ The Trustee brings his Motion for "Turnover" under § 542 of the Bankruptcy Code which holds that any property of a debtor which the trustee can use or sell (or which the debtor can exempt), and which is in the possession, custody, or control of the debtor or a third party must be turned over to the trustee unless such property is of an inconsequential value or benefit to the bankruptcy estate. *In re Norris,* 183 B.R. 437, 462–63 (Bankr.W.D.La.1995). In addition, and although not specifically stated in the statute, fundamental to the concept of "Turnover" under § 542(a) is that the asset to be turned over must be property of the debtor's bankruptcy estate pursuant to § 541(a). *Cates–Harman v. Stage (In re Stage),* 85 B.R. 880, 881 (Bankr.M.D.Fla.1988); *Marlow v. Oakland*

*Gin Company, Inc. (In re Julien Co.),* 128 B.R. 987, 992–93 (Bankr.W.D.Tenn.1991).

■ Under § 541(a) property of the estate includes "all legal or equitable interests of the debtor in property." This definition is meant to be very broad and includes practically every conceivable interest that a debtor may have in property. See *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203–04, 103 S.Ct. 2309, 2312–13, 76 L.Ed.2d 515 (1983); *In re Labrum & Doak, LLP,* 227 B.R. 391, 410 (Bankr. E.D.Pa.1998). For example, intangible interests in property are clearly included within a debtor's bankruptcy estate. *Brown v. Dellinger (In re Brown),* 734 F.2d 119 (2nd Cir.1984). However, in line with the "fresh start" policy of the Bankruptcy Code, property of the estate is generally limited to legal or equitable interests in property that were held by the debtor prior to, and up until the time of the filing of the bankruptcy petition. *See American Bankers Ins. Co. v. Maness,* 101 F.3d 358, 362 (4th Cir.1996); *see also* 5 Collier on Bankruptcy ¶ 541.03 at 541–9 (15th Ed.1998). This general rule, however, is subject to a few limited exceptions for certain types of after-acquired property. Specifically relevant to this case is § 541(a)(5)(B), which provides that property acquired "as a result of ... an interlocutory or final divorce decree" becomes property of a debtor's bankruptcy estate if the following two conditions are met: First, the debtor must acquire or become entitled to acquire an interest in the property within One Hundred Eighty (180) days after filing for bankruptcy relief, and second, the property must have otherwise been property of the debtor's bankruptcy estate if the debtor had held an interest in the property on the date of the filing of his original bankruptcy petition. § 541(a)(5)(B).[1]

---

**1.** Section 541(a)(5) is known as the Claw–Back Provision because it brings back into the bankruptcy estate property that would otherwise be excluded from the estate. Congress enacted the Claw–Back Provision in order to

prevent debtors from manipulating the bankruptcy petition date so as to deprive creditors of certain assets. *United States of America v. Gold (In re Avis),* 178 F.3d 718 (4th Cir.1999) (dissenting opinion).

In the instant case, there is no disagreement between the Parties that the Magistrate's "Decision" was rendered within One Hundred Eighty (180) days after the Debtors filed for bankruptcy relief. Rather, it is the second requirement which the Parties contest with Wendy Greer arguing that, regardless of when the state court Magistrate's "Decision" was rendered, this "Decision" did not confer upon her an interest that would qualify as property of the estate under § 541(a).

■ Under § 541(a) the determination of whether a debtor's interest in property constitutes "property of the estate" is a question of federal law. However, unless there is a strong countervailing federal interest, the actual existence of a debtor's right in property, including its nature and scope, is determined by looking at state law. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *In re White*, 851 F.2d 170, 173 (6th Cir.1988); *In re Lewis (Charles R. Hall Motors, Inc. v. Lewis)*, 137 F.3d 1280, 1282 (11th Cir.1998). Therefore, at a minimum, the Trustee must demonstrate that the property allocated to Wendy Greer in the "Decision" rendered by state court Magistrate conferred upon her a property interest under Ohio law. In making this determination, it is the Trustee who bears the burden of proof. *Alofs Mfg. Co. v. Toyota Mfg., Kentucky, Inc. (In re Alofs Mfg. Co.)*, 209 B.R. 83, 91 (Bankr.W.D.Mich.1997); *Boyer v. Davis (In re U.S.A. Diversified Prod., Inc.)*, 193 B.R. 868, 872 (Bankr.N.D.Ind. 1995), *aff'd*, 196 B.R. 801 (N.D.Ind.1996), *aff'd*, 100 F.3d 53 (7th Cir.1996).

Ohio R.Civ.P. 53 governs the powers and duties accorded to magistrates under Ohio law, and provides that magistrates principally serve in an advisory capacity to the court from which they were appointed. In accordance with this advisory role, magistrates are accorded limited powers which include, among other things, (1) the powers to regulate all proceedings which take place before them, (2) the power to summon and compel the attendance of witnesses, (3) the authority to rule on the admissibility of evidence, and (4) under certain circumstances, the power to make a record of the evidence offered and excluded. Ohio R.Civ.P. 53. However, conspicuously lacking from a magistrate's authority is the power to enter orders or final judgments.[2] Ohio R.Civ.P. 53(2); *Barker v. Barker*, 118 Ohio App.3d 706, 711–12, 693 N.E.2d 1164, 1167 (1997); *Brown v. Cummins*, 120 Ohio App.3d 554, 698 N.E.2d 501 (6th Dist.1997).

■ Notwithstanding this limitation upon a magistrate's authority, the Trustee argues that the "Decision" rendered by the Magistrate in the present case was interlocutory in nature, and thereby conferred upon Wendy Greer an interest in Brian Greer's 401(k) Plan and COLA account. In support of this argument, the Trustee points to the state court's complete adoption of the Magistrate's division of the Debtors' property. This Court, however, simply cannot find that this inference is a proper application of Ohio law. Specifically, a further examination of Ohio law shows that, in addition to magistrates lacking the authority to enter final orders and judgments, magistrates also lack the authority under Ohio law to make their "decisions" effective immediately. *Brown v. Cummins*, 120 Ohio App.3d 554, 556, 698 N.E.2d 501, 502 (6th Dist.1997). Instead, any "decision" rendered by a magistrate only becomes effective when actually adopted by a court of competent jurisdiction, and as a consequence, a magistrate's "decision" has no contemporaneous bind-

---

2. Note, however, that under Ohio R.Civ.P. 53, a magistrate may enter orders relating to his authority to regulate the hearings over which he presides. Specifically, a magistrate, without judicial approval, may enter orders for, pretrial proceedings under Ohio R.Civ.P. 16, discovery proceedings under Ohio R.Civ.P. 26 to 37, temporary restraining orders under Ohio R.Civ.P. 75(1), hearings under Ohio R.Civ.P. 75, and other orders as necessary to regulate the proceedings. Ohio R.Civ.P. 53(3)(a).

ing effect upon the parties until a court formally enters its approval of the magistrate's decision. OHIO R.CIV.P. 53(4)(a); *Takacs v. Baldwin,* 106 Ohio App.3d 196, 207–08, 665 N.E.2d 736, 743–44 (6th Dist. 1995). Consequently, given these limitations, this Court cannot find that Wendy Greer obtained by virtue of the magistrate's "Decision" alone, any interest in her former husband's property sufficient to bring it within the scope of estate property under § 541(a). Accordingly, the Trustee cannot rely upon the Magistrate's "Decision" to recover the interest Wendy Greer now has in the 401(k) Plan and COLA account.

The Court's analysis, however, does not end there. Instead, as previously noted, under § 541(a) of the Bankruptcy Code, property of a debtor's bankruptcy estate is meant to be interpreted broadly so as to include practically every conceivable interest that a debtor may have in property. Accordingly, in conformity with this tenet, the Court will examine whether there exists an earlier time at which Wendy Greer obtained an interest in her former husband's separately titled property for purposes of including such property in her bankruptcy estate.

■ A fundamental principle of Ohio law is that marriage alone does not confer upon a spouse an interest in the other spouse's separately titled property. O.R.C. § 3103.04; *see also* § 3103.07 (subject only to a spouse's right to dower and support, each spouse may take, hold, and dispose of property, real or personal, as if he or she were unmarried); *State v. Garber,* 125 Ohio App.3d 615, 618–19, 709 N.E.2d 218 (6th Dist.1998) (ownership of property by one spouse is as distinct from ownership by the other as if the spouses were strangers). Once more, the exclusivity of a spouse's ownership interest in their

separately titled property is not affected by the commencement of a bankruptcy proceeding, as it is clear that the filing of a joint petition in bankruptcy creates two separate and distinct bankruptcy estates.[3] 11 U.S.C. § 302(a); *In re Gale,* 177 B.R. 531, 534 (Bankr.E.D.Mich.1995).

■ It is in conformity with these principles that Wendy Greer asserts that she did not acquire an interest in Brian Greer's 401(k) Plan and COLA until the time the state court issued its final decree of divorce, and generally, the Court agrees with this statement of law, as it is clear that under Ohio law, and its applicability via the Bankruptcy Code, that a party does not acquire an interest in another person's property until the issuance of a final order by a court of competent jurisdiction. *See Rempe & Son v. Ravens,* 68 Ohio St. 113, 67 N.E. 282 (1903). However, what makes this case different from many other jointly filed bankruptcy cases is that the Debtors were in the midst of a divorce at the time the Debtors petitioned this Court for bankruptcy relief. Consequently, the undivided interest each Debtor may have previously enjoyed in his or her separately titled property was lost based upon the fact that, under Ohio law, the commencement of a divorce proceeding vests the state court with jurisdiction over all property in which either spouse has an interest, regardless of whether or not the property is separately titled. *Bolinger v. Bolinger,* 49 Ohio St.3d 120, 123, 551 N.E.2d 157, 160 (1990) *citing* O.R.C. §§ 3105.011, 3105.17 and 3105.18.

Of course, merely because an Ohio state court retains jurisdiction over a divorcing couple's property, does not, by this fact alone, necessarily mean that a spouse acquires by virtue of the filing of the divorce action an interest in the other spouse's separately titled property. However, in

---

3. The Court does have the power to consolidate a joint bankruptcy petition pursuant to § 302(b), the effect of which is to combine the assets and liabilities of the debtor into a single pool to pay creditors. House Report No. 95– 595, 95th Cong. 1st Sess. (1977) 321, U.S.Code Cong. & Admin.News 1978, p. 6278. Consolidation, however, did not occur in this case.

accordance with the state court's jurisdictional authority over the parties' property, the following requirements are imposed upon the state court as it relates to the parties' property.

Under Ohio law, when a married couple files for divorce, the state court with jurisdiction over the parties' property is required to determine what property constitutes "marital property" and what property constitutes "separate property." Specifically, Ohio law states that, "[i]n divorce proceedings, the court shall ... determine what constitutes marital property and what constitutes separate property." Ohio law then defines "marital property," in relevant part, as "all real or personal property currently owned by either or both of the spouses, including but not limited to retirement benefits, that was acquired by either or both of the spouses during the marriage." O.R.C. § 3105.171(A)(3)(a). In addition, O.R.C. § 3105.171(H) makes it clear that the mere "holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether such property is marital property." Thus, whether property is considered "marital" or "separate" in nature is not affected by which spouse holds title to the property. *Holman v. Holman*, 1997 WL 458046, *2 (Ohio App.6th Dist.1997). Thereafter, once a determination is made as to which classification an item of property belongs, the state court is mandated to equitably divide all the property found by the court to constitute the parties' "marital property." O.R.C. §§ 3105.171(B) & (C); *Cherry v. Cherry*, 66 Ohio St.2d 348, 348, 20 O.O.3d 318, 421 N.E.2d 1293, 1294 (1981); *see also Getter v. Getter*, 90 Ohio App.3d 1, 6, 627 N.E.2d 1043, 1046 (2nd Dist.1993) (Equity is the guidepost in dividing the marital assets of the parties in a divorce). In addition, to ensure that an equitable division of the parties' marital assets occurs, a court may place restrictions on a spouse's transfer of his or her separately titled property, *Oatey v. Oatey*, 1998 WL 6948 *1 (Ohio App. 8th Dist.).

Examining this statutory framework, and its appurtenant case law, this Court finds that it was the intention under Ohio law to confer upon a spouse an interest in any property that is or would qualify as "marital property," regardless of whether such property was separately titled. The Court notes that this holding is generally in line with decisions in other districts which have addressed this issue. *See In re McCulley*, 150 B.R. 358, 361 (Bankr. M.D.Pa.1993) (under Pennsylvania law "the date of entitlement to a spouse with regard to marital property is on the date the divorce is filed"); *see also Finfer v. Finfer*, 1994 WL 695329 (N.Y.Sup.) (husbands' failure to list any of the wife's assets as marital property estopped him from making claim to those assets in State court). *But see Cooper v. Frederes (In re Frederes)*, 141 B.R. 289, 291 (Bankr. W.D.N.Y.1992) (under New York law "[t]here are no vested present or contingent property rights or interest, legal or equitable, in ... marital property solely because it is marital property ...").

The Court, however, after examining the scope of a spouse's interest in separately titled "marital property," also comes to the conclusion that such a property interest is limited. Specifically, given the fact that neither spouse is assured of receiving any specific item of "marital property," the Court holds that upon a spouse filing for divorce, and until a formal distribution of the parties' property is made, the interest a spouse acquires in the other's separately titled property is strictly contingent, and therefore subject to later divestment if the state court with jurisdiction over the parties' property does not enter an order awarding the property to the non-title holding spouse. The effect of this is that although contingent interests are clearly property of the bankruptcy estate pursuant to § 541(a), *Buckeye Union Ins. Co. v. Four Star Construction Co. (In re Four Star Construction Co.)*, 151 B.R.

817, 820 (Bankr.N.D.Ohio 1993), the contingency of the interest may prevent the bankruptcy trustee from ever utilizing the property for the benefit of the bankruptcy estate given the fact that federal law clearly holds that the extent to which an interest in property is limited in the hands of the debtor, it is equally limited in the hands of the bankruptcy estate. *Gouveia v. Internal Revenue Service (In re Quality Health Care)*, 215 B.R. 543, 561 (Bankr. N.D.Ind.1997). Thus, if for any reason a debtor's contingent interest in an item of property is ever divested, the bankruptcy trustee's interest in the property would also be subject to divestment.

■ The converse, however, is also true pursuant to § 541(a)(7) which provides that property of a debtor's bankruptcy estate may include "[a]ny interest in property that the estate acquires after the commencement of the case." *In re Doemling*, 116 B.R. 48, 50 (Bankr.W.D.Pa.1990) ("[p]roperty interests acquired by the estate after commencement of the case will, in most instances, arise out of property in which the debtor had an interest as of commencement of the case"). Therefore, once a contingent right in property vests, any rights the debtor would have acquired as a result of the vesting of the property interest become included within a debtor's bankruptcy estate, and may be therefore utilized by the bankruptcy trustee. *See, e.g., Alsberg v. Robertson (In re Alsberg)*, 68 F.3d 312 (9th Cir.1995), *cert. denied*, 517 U.S. 1168, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996) (postpetition appreciation in home value is property of the estate); *Allen v. Levey (In re Allen)*, 226 B.R. 857, 865 (Bankr.N.D.Ill.1998) (debtor's unexercised contract option held to be property of the bankruptcy estate upon filing); *Baker v. Rank (In re Baker)*, 154 F.3d 534, 537 (5th Cir.1998) (the estate does not remain static); *In re Gallucci*, 931 F.2d 738, 743 (11th Cir.1991) (§ 541(a)(7) merely clarifies that property of the estate is an all-embracing definition). Accordingly, as Wendy Greer's interest in her former husband's separately titled property clearly vested upon the state court's entry of the Debtors' divorce decree, any and all the interests that she succeeded to became a part of her bankruptcy estate, and thus subject to administration by the Trustee.

Wendy Greer, however, in anticipating the foregoing decision, asserts that even if her bankruptcy estate obtained an interest in her former husband's 401(k) Plan, her interest in the Plan is not subject to turnover because the property was listed as exempt in the Debtors' bankruptcy schedules. On the other hand, the Trustee contends that the postpetition transfer of Brian Greer's interest in the 401(k) Plan to Wendy Greer, vis-a-vis the state court divorce decree, caused the property to lose any exempt characteristics that it may have once enjoyed while titled solely in the name of Brian Greer. (It should be noted that no assertion has been made by either Brian Greer or Wendy Greer that the COLA account is subject to an exemption, thus Wendy Greer's interest in this property is subject to "turnover").

Section 522 of the Bankruptcy Code governs the allowance of exemptions in bankruptcy. Under § 522 a debtor has the option of choosing between those exemptions provided for by federal bankruptcy law under paragraph (d) of § 522, or alternatively, of choosing those exemptions made available under state and federal non-bankruptcy law. 11 U.S.C. § 522(b)(2)(A). Notwithstanding, § 522(b)(1) also gives the individual states the option of "opting-out" of the federal bankruptcy exemption scheme, in which case a debtor's exemptions are entirely dependent on the state of the debtor's domicile. 11 U.S.C. § 522(b)(1); *Arkison v. Gitts (In re Gitts)*, 116 B.R. 174, 178 (9th Cir. BAP 1990), *affirmed*, 927 F.2d 1109 (9th Cir.1991). Ohio has, pursuant to O.R.C. § 2329.662, made such an election, and therefore, a debtor domiciled in Ohio may only claim an exemption in a bankruptcy case if such an exemption would be allowable under applicable Ohio state law,

local law, or non-bankruptcy federal law. 11 U.S.C. § 522(b)(2)(A).

In the present case, Wendy Greer's claims her interest in the 401(k) Plan is exempt pursuant to Ohio Revised Code § 2329.66(A)(10)(b)[4] which provides, inter alia, that:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

(10)(b) Except as provided in sections 3111.23 and 3113.21 of the Revised Code, the person's right to receive a payment under any pension, annuity, or similar plan or contract, not including a payment from a stock bonus or profit-sharing plan or a payment included in division (A)(6)(b) or (10)(a) of this section, on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the person and any of the person's dependents[.]

The Trustee, however, does not contest Wendy Greer's compliance with this statutory exemption on substantive grounds. In fact, the Trustee has not brought against either Wendy Greer or Brian Greer an objection to the 401(k) exemption in accordance with Bankruptcy Rule 4003(b). Rather, the Trustee objects to Wendy Greer's claim of exemption in the 401(k) Plan on the basis that upon one-half (½) of Brian Greer's interest in the 401(k) Plan being transferred to Wendy Greer in accordance with the state court divorce decree, the property lost any exempt characteristics it may have once enjoyed. In other words, the Trustee asserts that post-petition changes in a debtor's interest in an item of property can affect the debtor's entitlement to an exemption in that property. In support of this argument, the Trustee cites *Cordova v. Mayer (In re*

4. In 1998 the Ohio State Legislature passed an amendment to § 2329.66(A)(10) which became effective on March 22, 1999. In the amendment subparagraphs (a) and (c) of

*Cordova),* 73 F.3d 38 (4th Cir.1996), which held that a postpetition transformation in an item of real property from a tenancy by the entirety to a fee simple interest, as the result of a divorce, caused the property to lose its exempt status, and, in addition, as the transformation occurred within One Hundred Eighty (180) days from the filing of the debtor's bankruptcy petition, such property was thereafter subject to administration by the bankruptcy trustee under § 541(a)(5)(B). This Court must, however, reject the Trustee's arguments based upon the following grounds:

First, Ohio law holds that in bankruptcy, a debtor's eligibility for an exemption must be gauged from the time the debtors' joint bankruptcy petition is filed, and as a consequence, later changes that occur in a debtor's set of circumstances are ignored. *Schindler v. Schindler,* 95 Ohio App.3d 277, 281, 642 N.E.2d 404, 406 (9th Dist.1994) (the date of the filing of a bankruptcy petition is the guidepost in establishing a person's rights in bankruptcy regardless of any later change in circumstances) *citing Heldt v. State of South Dakota,* 17 B.R. 519, 521 (Bankr. D.S.D.1982) and *Leppaluoto v. Combs (In re Combs),* 101 B.R. 609, 617 (9th Cir. BAP 1989); *In re Billerman,* 88 B.R. 133, 135 (Bankr.N.D.Ohio 1988) ("[a] debtor's eligibility for exemptions is determined as of the date the petition is filed"); *see also F & M Marquette National Bank v. Richards (In re Richards),* 43 B.R. 554, 562 (Bankr.D.Minn.1984) *rev'd on other grounds* 780 F.2d 24 (8th Cir.1985) (date for determining exemptions is the date on which the bankruptcy petition is filed, and thus a subsequent change in the state law does not affect the exemption). Second, even if this Court were to agree with the decision by the Fourth Circuit Court of Appeals in *Cordova v. Mayer (In re Cordova),* the holdings contained therein are

paragraph (A)(10) were modified and a subparagraph (d) was added. Subparagraph (b), however, was not altered.

not germane in the present case because Wendy Greer is not claiming an exemption under § 522(b)(2)(B), and based upon this Court's earlier discussion, § 541(a)(5)(B) is not applicable in this case. Thus, the Court must, in accordance with Ohio law, hold that Wendy Greer's entitlement to the exemption in the 401(k) Plan was fixed upon the commencement of the Debtors' bankruptcy case, and therefore any post-petition changes that occurred with Wendy Greer's interest in the 401(k) Plan must be disregarded. This holding, however, does raise one final issue; namely whether the contingency of a debtor's interest in property effects under Ohio law the debtor's entitlement to claim an exemption in that item of property.

Under Ohio law a contingent interest can be defined as "one in which there is no present fixed right of either present or future enjoyment; but in which a fixed right will arise in the future under certain specified contingencies." *Cleveland Trust Co. v. McQuade,* 106 Ohio App. 237, 248, 142 N.E.2d 249, 257 (8th Dist.1957). Hence, the nature of a contingent interest is that the holder may never realize his interest, or may only realize it at some point in time in the distant future. *Id.* However, unlike a mere expectancy interest, a contingent interest in property confers upon its holder a true interest in that item of property. Therefore, a contingent interest in property has value, no matter how improbable the contingency (of course, the value of the interest is in direct relationship to the probability of the contingency occurring). *See In re Marriage of Leland,* 69 Wash.App. 57, 71, 847 P.2d 518 (1993). In accordance therewith, Ohio law holds that generally contingent interest are fully alienable and may be attached by creditors. *Moore v. Foresman,* 172 Ohio St. 559, 565, 179 N.E.2d 349, 353 (1962). In fact, Ohio's Probate law codifies this principle by stating, "[r]emainders, whether vested or contingent, executory

interests, and other expectant estates are descendible, devisable, and alienable in the same manner as estates in possession." O.R.C. § 2131.04.

In recognition of the potential for a contingent interest to be sold and also attached by creditors, bankruptcy courts, in interpreting Ohio law, have allowed debtors to claim exemptions in contingent interest. For example, on more than one occasion it has been held that a debtor may claim an exemption in an inchoate dower[5] interest. *Gilbert v. Castor (In re Castor),* 99 B.R. 807 (Bankr.N.D.Ohio 1989); *In re Featherstone,* 8 B.R. 321 (Bankr.S.D.Ohio 1980); *In re Hill,* 11 B.R. 217 (Bankr.S.D.Ohio 1981); *In re Miller,* 151 B.R. 800 (Bankr.N.D.Ohio 1992). In addition, this Court in *In re Billerman* held that a debtor was entitled to claim a homestead exemption in a right to an equity of redemption. 88 B.R. 133, 136 (Bankr.N.D.Ohio 1988). Therefore, in light of the potential value that a contingent interest may hold, and given the fact that this Court can see no overriding policy reason why "marital property" should be treated any differently than either a dower interest or an equity of redemption interest, the Court finds that Wendy Greer is not precluded from claiming an exemption, pursuant to O.R.C. § 2329.66(A)(10)(b), in the contingent interest she obtained in Brian Greer's 401(k) Plan. *See also In re Moffat,* 107 B.R. 255, 260 (Bankr.C.D.Cal.1989) (homestead exemption allowed in contingent reversionary interest); *In re Clarence Sylvester Dick,* 136 B.R. 1000, 1004 (Bankr.W.D.Tenn. 1992) (debtor could claim exemption in contingent survivorship interest). In fact, to hold otherwise would actually put a debtor, such as Wendy Greer, in the awkward position of having property included in their bankruptcy estate, to which no claim of an exemption could be asserted.

The Court cautions, however, that this holding should not be taken to mean that

---

**5.** The inchoate right of dower is a contingent interest. *Grundstein v. Suburban Motor*

*Freight, Inc.,* 92 Ohio App. 181, 194, 107 N.E.2d 366, 373 (2nd Dist.1952).

the Court is ruling on the merits of Wendy Greer's actual entitlement to the exemption in the 401(k) Plan under the standards set forth in O.R.C. § 2329.66(A)(10)(b). Rather, the Court is merely holding that Wendy Greer, under the circumstances presented in this case, is not prohibited from attempting to assert an exemption in the 401(k) Plan. Accordingly, as Wendy Greer did, in fact, assert an exemption in the 401(k) Plan, and the Trustee has not objected to this claim of exemption in accordance with FED.R.BANKR.P. 4003(b), the Court will not question Wendy Greer's entitlement to the exemption. *See* FED. R.BANKR.P. 4003(c) ("the objecting party has the burden of proving that the exemptions are not properly claimed").

In conclusion, the Court finds that upon the commencement of the divorce proceedings between the Debtors, Wendy Greer obtained an interest in her former husband's 401(k) Plan and COLA account. Thereafter, upon the Debtors petitioning this Court for bankruptcy relief, this property became a part of Wendy Greer's bankruptcy estate, and thus subject to turnover under 11 U.S.C. § 542(a). However, as Wendy Greer had an interest in her former husband's 401(k) Plan, she was also entitled to assert an exemption against the property. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Summary Judgment Motion submitted by the Trustee, Louis Yoppolo, be, and is hereby, GRANTED in part and DENIED in part.

It is **FURTHER ORDERED** that Wendy Greer turn over to the Trustee, Louis Yoppolo, any and all nonexempt property received, or that will be received, as the result of her divorce action with Brian Greer, including any funds from the COLA Account Brian Greer maintained at his place of employment, but not including any funds from the 401(k) Plan Brian Greer maintained at his place of employment.