**In re Lawrence Edward STREET and Chrystal L. Street, Debtors.**

No. 07–54502.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Sept. 30, 2008.

D. William Davis, Bridgeport, OH, for Debtors.

---

*MEMORANDUM OPINION ON TRUSTEE'S MOTION FOR TURNOVER AND OBJECTION TO EXEMPTION*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

## I. Introduction

This contested matter is before the Court on the motion for turnover ("Motion") (Doc. 28) and objection to exemption ("Objection") (Doc. 38) filed by Thomas McK. Hazlett, the Chapter 7 trustee ("Hazlett" or "Trustee") of the bankruptcy estates of Lawrence Edward Street ("Lawrence") and Chrystal L. Street ("Chrystal") (jointly, "Debtors"). The Trustee seeks an order requiring Chrystal to turn over postpetition payments she receives from Lawrence ("Payments") as part of a division of certain marital property—a retirement plan and the marital residence—made in connection with their divorce proceeding. The Debtors filed a response to the Motion (Doc. 29) and one to the Objection (Doc. 39). For the reasons stated below, the Court concludes that Chrystal may use her exemptions in the retirement plan and the residence to retain the Payments.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B) and (E).

## III. Background

Lawrence and Chrystal were married for approximately nine years. During the marriage they raised three children, built equity in a marital residence ("Residence") and accrued assets in a State Teachers Retirement System ("STRS") pension plan in which Lawrence participates ("Retirement Plan"). In early 2007, Chrystal filed a complaint seeking a divorce in the Belmont County Court of Common Pleas ("State Court"). After Lawrence filed an answer and counterclaim, the parties resolved their respective claims, which was memorialized in an Agreement ("Agreement"). Among other things, Lawrence, in consideration of Chrystal's agreement to relinquish her interest in the Retirement Plan and the Residence, agreed to make installment payments to Chrystal in the aggregate amount of $14,500.

During a State Court hearing held on May 31, 2007, counsel presented the Agreement to the presiding magistrate ("Magistrate"), who entered a Docket & Journal Entry ("Journal Entry") approving the Agreement, with a divorce decree to follow from Lawrence's counsel within 14 days.

On June 12, 2007 ("Petition Date"), the Debtors filed a joint Chapter 7 bankruptcy petition together with their schedules of assets and liabilities (Doc. 1). On their Schedule C—Property Claimed as Exempt—they included, among other assets, the Retirement Plan with a claimed exemption of $1 and the Residence with a claimed exemption of $10,000 ($5,000 each). Hazlett did not object to the exemptions.

On or about October 16, 2007—following an unexplained delay—Lawrence's domestic relations attorney submitted a proposed divorce decree to the State Court. On October 17, 2007, the Magistrate entered the decree ("Decree") and the State Court adopted it, thereby granting final approval of the Agreement. Two provisions of the Decree are relevant here:

#### REAL PROPERTY

[Lawrence] will retain possession and have ownership of the [Residence] to the exclusion of [Chrystal]. [Lawrence] will be responsible for any and all expenses associated with [the Residence] and he will also be responsible for refinancing any and all existing mortgages so as to release [Chrystal] from any further liability [t]hereon, with all of that to be accomplished within 36 months after the filing of this Decree of Divorce. When [Lawrence] so refinances, [Chrystal] will be responsible for providing a good and sufficient deed as to convey her interest in that property to [Lawrence].

In consideration of the transfer of the [Residence] and in further consideration of the division of the retirement assets ... [Lawrence] will be responsible for paying to [Chrystal] the amount of $14,500.00 to be paid in [installments [1]].

#### PENSION AND/OR RETIREMENT BENEFITS

Neither party will have any interest in the pension and/or retirement benefits

that the other is or may become entitled to receive and the Court will honor the request of the parties and decline to retain jurisdiction to ever reconsider the issue.

Decree at 4. In short, the Decree approved the Agreement's terms regarding the division of marital property.

On April 14, 2008, the Debtors filed an amended Schedule C (Doc. 35) in which they increased their claimed exemption in the Retirement Plan to $22,000 and continued to claim exemptions of $5,000 each in the Residence.

On April 18, 2008, the Court held a hearing on the Motion. On April 30, 2008, Hazlett filed the Objection, opposing Chrystal's attempt to use her exemptions in the Retirement Plan and the Residence to retain the Payments. On June 10, 2008, the parties filed a joint status report (Doc. 42) in which they agreed that the Court could use the evidence presented at the hearing on the Motion to determine the exemption issue raised by the Objection.

### IV. Arguments of the Parties

Hazlett contends that the Payments are non-exempt property of Chrystal's bankruptcy estate subject to turnover. In response, the Debtors advance two arguments. First, they assert that, because the Decree did not become final until it was approved by the State Court after the Petition Date, the Payments are not prop-

---

1. In addition to amounts Chrystal received under the Agreement prior to the Petition Date—which Hazlett is not seeking to recover—the Decree required Lawrence to make the following Payments: $2,000 by August 31, 2007; $1,500 by September 28, 2007; $3,750 by April 30, 2008; and $3,750 by October 30, 2008. According to the Debtors, $7,500 of the $14,500 amount was allocated to the Retirement Plan, and $7,000 was allocated to Chrystal's equity in the Residence. The Trus-

tee points out that the Decree did not specify the allocation between the Retirement Plan and the Residence. The Trustee, however, did not otherwise rebut the Debtors' testimony regarding the allocation at a hearing held on April 18, 2008. Based on that testimony, the Court finds that $7,500 of the $14,500 in Payments was for Chrystal's interest in the Retirement Plan and $7,000 was for her equity in the Residence.

erty of Chrystal's estate. Countering this argument, Hazlett points out that the State Court entered the Decree within 180 days after the Petition Date and that, under § 541(a)(5) of the Bankruptcy Code, property of a debtor's estate includes interests the debtor acquires within 180 days postpetition as a result of a divorce decree with the debtor's spouse. Second, the Debtors contend that, even if the Payments are property of Chrystal's estate, she may exempt them because the Payments divide the Debtors' interests in other assets—the Retirement Plan and the Residence—for which they have asserted valid, unopposed exemptions. Hazlett responds that, as of the Petition Date, Chrystal had no interest in the Retirement Plan, but intimates that she may have had an interest in the Residence.

## V. Legal Analysis

### A. Property of the Estate[2]

■ Subject to certain exceptions that do not apply here, property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Debtors do not deny that § 541(a)(1) initially brings property into the estate "whether or not [it is] exempt," *Johnston v. Hazlett (In re Johnston)*, 209 F.3d 611, 613 (6th Cir.2000) (quoting *Williamson v. Montgomery (In re Montgomery)*, 219 B.R. 913, 916 (10th Cir. BAP 1998)), nor do they deny that an asset must be property of the estate before

the debtor may claim an exemption for it. *See Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) ("[A]n interest that is not possessed by the estate cannot be exempted."). Rather, the Debtors contend that the State Court's entry of the Decree postpetition means that the Payments are not property of Chrystal's estate. The Debtors' argument is incorrect.

As the Trustee points out, a debtor's bankruptcy estate includes:

> [a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date ... as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree[.]

11 U.S.C. § 541(a)(5)(B).

■ This provision makes the Payments property of Chrystal's estate. A decision "rendered by a magistrate only becomes effective when actually adopted by a court of competent jurisdiction...." *Greer,* 242 B.R. at 394. The State Court entered the Decree within 180 days after the Petition Date. Chrystal, therefore, became "entitled to acquire" the Payments within 180 days postpetition, and the Payments thus were property of her bankruptcy estate under § 541(a)(5)(B).[3]

---

2. The filing of a joint case creates separate estates. *See Bunker v. Peyton (In re Bunker),* 312 F.3d 145, 150 (4th Cir.2002) ("[W]hen spouses file a joint Chapter 7 petition, separate bankruptcy estates are created."); *In re Greer,* 242 B.R. 389, 395 (Bankr.N.D.Ohio 1999) ("[I]t is clear that the filing of a joint petition in bankruptcy creates two separate and distinct bankruptcy estates."). The Debtors' estates have not been substantively consolidated, so the estate on behalf of which the

Trustee seeks turnover is Chrystal's, for the benefit of her creditors.

3. The Decree could have made Chrystal an alternate payee to be paid directly by the STRS. *See* Ohio Rev.Code. Ann. §§ 3105.80–3105.90 (Alternate Payees Under Public Retirement Plans). Had she been named an alternate payee, the Payments would not have been property of Chrystal's estate at all, and the Court would not reach the exemption issue. *See In re Carter–Bland,* 382 B.R. 743,

## B. Exemptions

### 1. Exemption Law in General

██ Generally, a Chapter 7 case filed by an individual results in a downward adjustment on both sides of the debtor's balance sheet. Debtors reduce liabilities by receiving a discharge of certain indebtedness, but in exchange must turn over nonexempt assets to the Chapter 7 trustee for liquidation and distribution to creditors. On the asset side of the balance sheet, § 522(b)(1) exempts certain property from the estate. *See Rousey v. Jacoway*, 544 U.S. 320, 322, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005) ("The Bankruptcy Code permits debtors to exempt certain property from the bankruptcy estate, allowing them to retain those assets rather than divide them among their creditors."). In particular, § 522(b)(1) states: "[n]otwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection." 11 U.S.C. § 522(b)(1). Paragraph (2) provides for certain federal law exemptions that the debtor may choose if applicable state law permits the debtor to do so. Ohio law requires debtors to use the exemptions provided by the State. *See* Ohio Rev.Code Ann. § 2329.662 (West 2008) ("[T]his state specifically does not authorize debtors who are domiciled in this state to exempt the property specified in the 'Bankruptcy Reform Act of 1978[.]' "). "The party objecting to an exemption— here, the Trustee—has the burden of proving that the exemption is not properly claimed." *In re Kimble*, 344 B.R. 546, 551 (Bankr.S.D.Ohio 2006). Courts construe exemption statutes liberally in favor of debtors. *Id.* at 554.

The Debtors contend that Chrystal may exempt the Payments from her estate because the Payments are attributable to the division of two types of property—the Retirement Plan and the Residence—each of which is exempt under Ohio law. Hazlett does not challenge the exemptibility of the Retirement Plan and the Residence (up to $5,000 per debtor as of the Petition Date) under Ohio law. Rather, he disputes that Chrystal had an interest in the Retirement Plan as of the Petition Date and also disputes that she may use any exemption in the Retirement Plan or in the Residence to retain the Payments.

### 2. Retirement Plan

██ The Ohio exemption provision applicable to the Retirement Plan states:

Every person who is domiciled in this state may hold ... exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order ... the person's right to a pension, benefit, annuity, retirement allowance, or accumulated contributions ... as exempted by section ... 3307.41....

Ohio Rev.Code Ann. § 2329.66(A)(10)(a). In turn, § 3307.41 states:

The right of an individual to a pension, an annuity, or a retirement allowance itself, the right of an individual to any optional benefit, or any other right or benefit accrued or accruing to any individual under this chapter, the various funds created by section 3307.14 of the Revised Code, and all moneys, investments, and income from moneys or investments ... shall not be subject to execution, garnishment, attachment, the

750–51 (Bankr.S.D.Ohio 2008) (court did not decide exemption issue because interest which Chapter 7 debtor obtained under qualified domestic relations order in former spouse's stock ownership plan was excluded from property of debtor's estate). The Debtors, however, did not structure their property division using the alternate payee mechanism.

operation of bankruptcy or insolvency laws, or any other process of law whatsoever, and shall be unassignable except as specifically provided in this chapter or section[ ] 3105.171 . . . .

Ohio Rev.Code Ann. § 3307.41.[4] The Trustee argues that Chrystal is unable to claim an exemption under these provisions because the Agreement and the Journal Entry divested her of any interest in the Retirement Plan, leaving her with only a nonexempt right to periodic cash payments. To the contrary, for the reasons stated below, the Court concludes that, upon the commencement of the divorce proceeding between the Debtors, Chrystal obtained an interest in the Retirement Plan and retained that interest as of the Petition Date, entitling her to utilize the exemption.

First, Chrystal had an interest in the Retirement Plan as of the Petition Date:[5]

Under Ohio law, when a married couple files for divorce, the state court with jurisdiction over the parties' property is required to determine what property constitutes "marital property" and what property constitutes "separate property." Specifically, Ohio law states that, "[i]n divorce proceedings, the court shall . . . determine what constitutes marital property and what constitutes separate property." Ohio law then defines "marital property," in relevant part, as "all real or personal property currently owned by either or both of the spouses, including but not limited to retirement benefits, that was acquired by either or both of the spouses during the marriage." [Ohio Rev.Code] § 3105.171(A)(3)(a). . . .

Examining this statutory framework, and its appurtenant case law, this Court finds that it was the intention under Ohio law to confer upon a spouse an interest in any property that is or would qualify as "marital property," regardless of whether such property was separately titled.

*Greer*, 242 B.R. at 396 (citations omitted). Accordingly, the Retirement Plan constituted marital property when Chrystal filed for divorce—which she did prior to her bankruptcy filing—and she thus possessed an interest in it on the Petition Date. And a debtor may exempt property from his or her estate if the debtor—and thus the estate—has an interest in the property as of the petition date. *See In re Guikema*, 329 B.R. 607, 619 n. 8 (Bankr.S.D.Ohio 2005) ("The right to claim an exemption from property of the bankruptcy estate arises and is fixed in a voluntary case on the date the petition is filed." (internal quotation marks omitted)).

■ Chrystal's interest in the Retirement Plan was merely a contingent interest as of the Petition Date and was subject to divestment until the State Court entered the Decree. *See Greer*, 242 B.R. at 396 ("[G]iven the fact that neither spouse

---

**4.** In Schedule C, the Debtors do not rely on Ohio Revised Code §§ 2329.66(A)(10)(a) or 3307.41 to support the exemption in the Retirement Plan. Rather, they incorrectly rely on Ohio Revised Code § 3307.71—which relates to restoring service credit in the STRS—and on § 3309.66, which relates to exemptions in the Public School Employees Retirement System, not the STRS. The Debtors, though, may amend the Schedules "as a matter of course at any time before the case is closed[,]" absent bad faith or the concealment of assets.

Fed. R. Bankr.P. 1009(a); *see also Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir.1984).

**5.** The Debtors presented no evidence showing that Chrystal had an interest in the Retirement Plan, as a beneficiary or otherwise, prior to filing for divorce. *See Greer*, 242 B.R. at 395 ("A fundamental principle of Ohio law is that marriage alone does not confer upon a spouse an interest in the other spouse's separately titled property.").

is assured of receiving any specific item of 'marital property,' the Court holds that upon a spouse filing for divorce, and until a formal distribution of the parties' property is made, the interest a spouse acquires in the other's separately titled property is strictly contingent, and therefore subject to later divestment if the state court with jurisdiction over the parties' property does not enter an order awarding the property to the non-title holding spouse."). But a debtor may claim an exemption in an asset even though his or her only interest in the asset is contingent. *See id.* at 399 ("In recognition of the potential for a contingent interest to be sold and also attached by creditors, bankruptcy courts, in interpreting Ohio law, have allowed debtors to claim exemptions in contingent interest[s]."). In *Greer*, as Hazlett does here, the Chapter 7 trustee sought turnover from the debtor's wife (who also was a debtor) of, among other things, her interest in her former husband's/joint debtor's 401(k) plan, which interest arose from a divorce decree adopted by the state court after the petition date. The bankruptcy court held that the debtor-wife could exempt her interest in the 401(k) plan even though her interest was contingent on the petition date. As the court noted in *Greer*, if this were not the case then the debtor would be unable to claim an otherwise available exemption merely because the property came into the estate postpetition under § 541(a)(5)(B), *see id.*, an anomalous result that finds no support in the Bankruptcy Code. Chrystal, therefore, may claim an exemption in the Retirement Plan even though her interest was contingent as of the Petition Date.

■ Chrystal also may exercise her exemption and retain the portion of the Payments allocated to the Retirement Plan because, under Sixth Circuit law, Chrystal's interest in the Payments is itself deemed to be an interest in the Retirement Plan. *See McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996); *Hines v. Hines (In re Hines)*, 193 Fed.Appx. 391 (6th Cir. BAP 2006). In *McCafferty*, the Chapter 7 debtor sought to discharge monthly payments that he owed his former wife in exchange for her relinquishment of her right to a portion of his benefits in a retirement plan maintained by the STRS. *McCafferty*, 96 F.3d at 194. Pursuant to a prepetition divorce decree, the state court had awarded the payments to the debtor's former wife "as a distribution of her interest in [the debtor]'s retirement plan." *Id.* at 197. The bankruptcy court and the district court both held that the debt was dischargeable under § 523(a)(5). The Sixth Circuit reversed, holding that "the Ohio divorce order awarded [the debtor's wife] a separate property interest in a portion of the STRS benefits from [the debtor's] employment." *Id.* It made no difference that the debtor—like Lawrence here—had not yet retired and thus was making the payments directly to his wife before he was even eligible to receive any retirement benefits from the STRS. "How the pension distribution was to be effected does not change the fact that [the debtor's wife] was the equitable owner of [a portion] of the pension benefits when [the debtor] began this bankruptcy proceeding." *Id.* at 199.

In *Hines*, the debtor filed a Chapter 13 plan classifying as an unsecured, nonpriority claim his obligation—mandated by a divorce decree—to pay his former wife a cash settlement compensating her for her interest in his retirement plan. The former wife filed an objection to the plan on the ground that her claim was nondischargeable. *Hines*, 193 Fed.Appx. at 394. The bankruptcy court sustained the objection to confirmation and the Bankruptcy Appellate Panel ("BAP") affirmed. *Id.* at 392. The divorce court awarded a cash

payment to the debtor's former wife under a prepetition divorce decree "as and for her netted share of his retirement." *Id.* at 394. The divorce decree also provided that the debtor "shall, solely and exclusively, retain his retirement/pension plan through his employer ... free and clear of any interest of [the former wife]." *Id.* at 393. The debtor argued that the "solely and exclusively" and "free and clear" language of the divorce decree meant that his former spouse had no interest in the retirement plan. Following *McCafferty,* the bankruptcy court and the BAP rejected the debtor's argument. According to the BAP, "[t]his language is merely a restatement of the directive that [the former spouse] was to be paid her interest in cash from the [d]ebtor rather than await distribution from the retirement plan itself, and *McCafferty* makes clear that the method of payment does not alter the ownership interests." *Id.* at 396. Furthermore, the BAP interpreted "the language relied upon by the [d]ebtor as providing that *the remainder of the [d]ebtor's retirement benefits* shall remain his solely and exclusively." *Id.* (emphasis added).

Although the issue in *McCafferty* and *Hines* was dischargeability, not the applicability of exemptions, the principle articulated in those cases applies with equal force here. Under the Decree, Chrystal receives the Payments partly in "consideration of the division of the retirement assets[.]" Decree at 3. Chrystal's interest in the portion of the Payments allocated to the Retirement Plan therefore is equivalent to an interest in the Retirement Plan. The language in the Decree that "[n]either party will have any interest in the pension and/or retirement benefits that the other is or may become entitled to receive[,]" Decree at 4, like the similar language in *Hines,* does not vitiate this interest. Rather, the language means only that Chrystal, as well as Lawrence, will have no

interest in each other's retirement plans except as provided for in the Decree. *See Hines,* 193 Fed.Appx. at 396 ("[T]he language in the divorce decree does not abrogate the intent of the provision when read in its entirety, a recognition that Hines was awarded a separate property interest in the Debtor's retirement plan.").

The Trustee argues that a debtor may not claim an exemption in the proceeds of an asset that would have been exempt had the debtor not transferred the asset prior to filing for bankruptcy relief. For example, the Trustee argues, a debtor who sells an automobile prior to filing for bankruptcy cannot utilize the vehicle exemption to exempt the sale proceeds. That may well be true, but this type of fact pattern—a prepetition transformation of property from one form to another—is not before the Court. Here, Chrystal did not become entitled to the Payments until after the Petition Date when the State Court approved the Decree. *See Greer,* 242 B.R. at 394–95 ("[A]ny 'decision' rendered by a magistrate only becomes effective when actually adopted by a court of competent jurisdiction, and as a consequence, a magistrate's 'decision' has no contemporaneous binding effect upon the parties until a court formally enters its approval of the magistrate's decision."). Prior to that time she held an interest in the Retirement Plan, and at no point did she forfeit her exemptible interest. True, the form of Chrystal's interest changed—from a contingent interest in the Retirement Plan to a noncontingent interest in the Payments. But this transformation occurred after the Petition Date and does not negate Chrystal's right to claim an exemption in the Payments—property she was awarded postpetition (when the Decree was entered) in exchange for relinquishing her interest in the Retirement Plan. *See Guikema,* 329 B.R. at 619 n. 8 ("Changes

in either a debtor's factual circumstances or the law after the petition date do not change the status of an exemption properly claimed as of the petition filing date." (internal quotation marks omitted)); *Greer*, 242 B.R. at 398 ("Ohio law holds that in bankruptcy, a debtor's eligibility for an exemption must be gauged from the time the debtors' joint bankruptcy petition is filed, and as a consequence, later changes that occur in a debtor's set of circumstances are ignored."). True, also, that Chrystal did receive several prepetition payments under the Agreement that had been approved by the Magistrate. But, as *Greer* makes clear, neither the Agreement nor the Magistrate's approval of it was final until the Decree was entered by the State Court. The Court, therefore, concludes that Chrystal—subject to claiming the exemption under the correct Ohio statutes—may exempt from her estate the portion of the Payments allocated to the Retirement Plan.[6]

### 3. Residence

■ Chrystal also claims an exemption for the portion of the Payments allocated to her equity in the Residence under Ohio Revised Code § 2329.66(A)(1)(b), which as of the Petition Date stated in pertinent part:

> Every person who is domiciled in this state may hold … exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order … the person's interest, not to exceed five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence.

Ohio Rev.Code Ann. § 2329.66(A)(1)(b).[7] To successfully assert an exemption under this section, Chrystal must (1) hold an "interest … in … one parcel or item of real or personal property" and (2) the parcel or item in which she holds an interest must be "use[d] as a residence." *Kimble*, 344 B.R. at 553 (internal quotation marks omitted).

Chrystal is entitled to this exemption. First, she had an ownership interest in the Residence as of the Petition Date. The Decree could not have divested Chrystal of that interest because, as discussed above, the State Court did not approve the Decree until after the Petition Date. More-

---

**6.** The Court notes without deciding that the result here might have been different under the Employee Retirement Income Security Act of 1974 ("ERISA"), which does not govern the Retirement Plan. *See Cosby v. Cosby*, 96 Ohio St.3d 228, 773 N.E.2d 516, 519 (2002) ("The STRS is the statutorily created public retirement system for public school teachers in Ohio, and as a government retirement system, it is exempt from federal ERISA requirements."). A domestic relations order overrides ERISA's anti-alienation provision only if it is a qualified domestic relations order ("QDRO"). *See Boggs v. Boggs*, 520 U.S. 833, 846, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) ("QDRO's, unlike domestic relations orders in general, are exempt from both the pension plan anti-alienation provision, § 1056(d)(3)(A), and ERISA's general preemption clause…."). By contrast, STRS benefits "shall be unassignable except as spe-

cifically provided in this chapter or section[ ] 3105.171…." Ohio Rev.Code Ann. § 3307.41. Section 3105.171, which governs the division of marital property in a divorce proceeding, provides, among other things, that "[t]he court may issue any orders under this section that it determines equitable…." Ohio Rev.Code Ann. § 3105.171(J). Although the order can be a QDRO, it need not be under Ohio law. *See Greenslade v. Greenslade*, 2007 WL 92847 at *4 (Ohio App. Jan. 12, 2007) (proceeds of STRS account are a marital asset that can be divided between divorcing spouses even without a QDRO).

**7.** Amendments to Ohio law enacted after the Petition Date increased the amount of this exemption but, because the law applicable to exemptions is fixed as of the Petition Date, the $5,000 amount applies here.

over, the Decree does not purport to divest Chrystal of her interest in the Residence immediately. Rather, it states that "[w]hen [Lawrence] ... refinances, [Chrystal] will be responsible for providing a good and sufficient deed as to convey her interest in that property to [Lawrence]." Under the Decree, then, Chrystal retained an interest in the Residence and is not obligated to convey that interest by deed to Lawrence until he refinances—an event that had not occurred as of the Petition Date.

Second, Chrystal's dependents—her children—live at the Residence whenever Lawrence is serving as the residential parent.[8] Residential use by a dependent satisfies the second prong of the exemption. *See In re Miller*, 157 B.R. 621, 622–23 (Bankr.N.D.Ohio 1993) (holding that debtor-husband could exempt his interest in home even though he lived elsewhere and even though the home was a residence only for his children and co-debtor wife, from whom he was separated).

Furthermore, because Chrystal is realizing her equity in the Residence in the form of the Payments, Chrystal may claim her exemption in the Residence by exempting the Payments from her estate. As explained above, a postpetition change in the form of exempt property generally does not alter the debtor's ability to claim an exemption in the replacement property.

## VI. Conclusion

For the foregoing reasons, the Court concludes that Chrystal may use her exemptions in the Retirement Plan and the Residence to retain the Payments and, therefore, she need not turn them over to the Trustee. Accordingly, the Motion is **DENIED** and the Objection is **OVERRULED.**

**IT IS SO ORDERED.**

---

8. By the Decree, the State Court approved a shared parenting plan providing, among other things, that Chrystal would be the residential parent of the Debtors' children for a portion of each week and that Lawrence (who continued to live at the Residence) would be the residential parent for the remainder.