MARY BEAR v. MATILDA STAHL, MARY CULP, JOSEPH BEAR, HENRY BEAR, LOUISA THOMAS, ANSON BEAR, AND JOHN WOODWORTH.

*Dower—Has always been favored in the law and equity courts—Act must be unambiguous, and intention plain, to operate as a bar—Where a wife is a non-resident of Michigan she cannot generally claim dower in land conveyed by her husband in said State—Rule does not apply where purchase and sale are part of a scheme to defraud the wife of her dower right in the land—This case held to fall within this exception to the general rule. (See head-note 1.)*

1. Complainant was induced to join with her husband in a deed of a farm in Ohio, on which they had resided since their marriage, by his representations that he would invest a portion of the purchase price in a small place near a neighboring city, and place the balance at interest, thereby insuring for them a more comfortable support. Soon after the sale her husband visited the State of Michigan, and on his return informed complainant that he had purchased a farm in the last-named State, to which the parties removed, and on which

----

they lived until the husband's death. After this event, complainant learned that the deed to the Michigan farm had been taken in the name of the children of her husband by a former wife, who had reconveyed to him a life-estate in the land, and who soon afterwards conveyed it to defendant Woodworth. After their father's death they denied the right of complainant to any interest in the land, whereupon she filed a bill to establish her dower rights therein.

On a review of the testimony [see opinion] the court affirmed the decree of the lower court in complainant's favor.

2. Dower has always been favored in the law and equity courts, and the act of a wife or widow barring same must be unambiguous, and the intention plain, to induce such courts to declare such bar.

3. Generally a wife cannot claim dower in land in this State which has been conveyed by the husband while both were non-residents [see *Ligare v. Semple*, 32 Mich. 443-4]; but where the purchase and sale of land in this State is a part of a scheme to perpetrate a fraud upon such non-resident wife for the purpose of depriving her of her dower rights, the rule above stated does not apply.

Appeal from Eaton. (Hooker, J.) Argued April 9, 1886. Decided April 29, 1886.

Bill filed to establish dower in land conveyed in fraud of such right. Defendants appeal. Affirmed. The facts are stated in the opinion.

*Huggett & Smith*, for complainant:

Requiring deeds of a life-estate from the heirs before the delivery of the Holmes deed made the transaction a single and entire one. It fixed the property in deceased for his life, the same as if the deed from Holmes had been made directly to him, and the only real difference was that he could not dispose of the title so as to cut off his lawful heirs at his death. The whole transaction is in effect similar to that of a will for some consideration, and, had it not been tainted with fraud upon complainant, might have been regarded as a proper testamentary act ; but if such it would not defeat complainant's right of dower : 1 Jarman on Wills, pp. 36 and 37 (n. 10) ; *Miller v. Stepper*, 32 Mich. 198.

The deceased, having paid the entire consideration for the lands, would, at common law, have had a trust estate therein. Under our law a widow may have a dower interest in an equitable estate. Were it not for our statute abolishing such trust estates, there would be no question about complainant's

right. But, although the statute may be a sufficient answer to any such claim on the part of one furnishing the means but having property deeded to a third person, still we do not perceive how this should cut off the right of his widow, especially if the property was thus conveyed with an intent to defeat her of her dower. In *Brown v. Bronson*, 35 Mich. 415, the property was conveyed *before* the marriage, consequently the husband of the complainant did not, at any time during the marriage, have an interest in the land that would have been recognized in his behalf by any court of justice, either in law or in equity; yet her right was sustained. This was only following the well-settled principle that dower is a right to be favored and carefully guarded and protected by the courts: *Cranson v. Cranson*, 4 Mich. 236 ; *Greiner v. Klein*, 28 Id. 16 ; *Miller v. Stepper*, 32 Id. 194 ; *Tabele v. Tabele*, 1 Johns. Ch. 45 ; *Swaine v. Perine*, 5 Id. 482.

Our statute granting the widow a right of dower in the real estate of her deceased husband, as also that of uses and trusts, seem to have been copied from similar ones in New York. In that state, however, it appears to be well settled that where the purchase money of premises is paid by a husband, but the conveyance taken in the name of a third person, still the wife will have a dower interest in such lands in case of the husband's death. The law of that state is clearly *distinguished* from that of the common law upon this question: *Hawley v. James*, 5 Paige, 452–3 ; *Ambrose v. Ambrose*, 1 P. Wms. Rep. 321.

The claim is made that defendant Woodworth was a *bona fide* purchaser of these premises, and for that reason should be protected against any dower interest that complainant may have. This ground we do not think tenable for several reasons :

1. He was not a purchaser in good faith ; he lived near by, and was well acquainted with the deceased's family ; he knew it was not the money of the heirs that paid for the land, that there was a claim that complainant had a dower interest ; and he himself claims to have bought the land to accommodate Anson Bear, one of the other defendants.

2. His own testimony shows that Anson Bear acted as his agent in negotiating the purchase of the land from the other heirs ; hence whatever knowledge or notice of complainant's rights Anson Bear may have had was notice to him. This principle is well sustained: *Huff v. Farwell*, 67 Iowa, 298 ; *Henkel v. Welsh*, 41 Mich. 666.

3. Had he been a *bona fide* purchaser, as claimed, still, in

this case, we do not think that such fact would avail him any-thing. 1 Story's Eq. Jr. § 630.

*Foote & McCall* and *Van Zile & Fox*, for defendants :

The questions involved in this case, and upon which it must be decided, are three, viz.:

1. Was complainant's husband, at any time during their marriage, *seized* of an estate of *inheritance* in the lands in question ?

2. Was he, or any person acting for or in his behalf, guilty of fraud which resulted in depriving complainant of her dower in this land, or of such a fraud as a court of law or equity would, in order to correct, set aside the conveyance to the defendants so far as it affected complainant's dower?

3. If the conclusion arrived at in answering these questions will not warrant a decree for the complainant, then was Jacob Bear possessed of such an *equitable* title as will warrant the court in awarding her such dower ?

The statute provides that the widow shall be entitled to dower, etc., "of all the lands whereof her husband *was seized of an estate of inheritance*, at any time during the marriage, unless she is lawfully barred thereof." How. Stat. § 5733.

The proofs, and the allegations in the bill and answer, show that Jacob Bear never had any legal title to the lands, except the life-estate ; that they were conveyed directly to his children by and with his consent and approval ; and that he after-wards recognized the title in his children by taking a life lease from them of the premises. We submit, therefore, that there is no proof in this case upon which to base an argu-ment that Jacob Bear was ever possessed of any *legal* title amounting to an estate of inheritance in the lands in ques-tion.

The widow's dower in lands is a mere continuance of the estate of inheritance of her husband, and is derived from and dependent upon it ; consequently when *his* estate is defeated *her* right of dower ceases. In no case can a widow maintain a claim for dower against a party whose title is *paramount* to that of her husband.

In this case the title of these defendants, and especially of John Woodworth, is *paramount* to any title that was ever obtained by Jacob Bear. *Emerson v. Harris*, 6 Metc. 475–7–8 ; *Firestone v. Firestone*, 2 Ohio St. 415 ; *In re Ransom*, 17 Fed. Rep. 331.

Before dower can attach the husband must at least be seized of an *equitable* estate of inheritance in the land in which

dower is claimed at the time of his death: *In re Ransom*, 17 Fed. Rep. 331; *Lobdell v. Hayes*, 4 Allen, 190; *Abbott v. Bosworth*, 36 Ohio St. 607; *Rand v. Kendall*, 15 Ohio R. 671.

It is nowhere claimed in this case that Jacob Bear ever had or was entitled to receive, either in law or equity, an estate of inheritance in the land in question. In an action at law it was necessary to allege the estate that was entitled to dower: *Emerson v. Harris*, 6 Metc. 477.

The widow, in her action for dower, can recover only upon the strength of her husband's title, and she *must show a seizin in him during coverture*, or she will fail in her suit: Tyler on Infancy and Coverture, p. 640; *Poor v. Horton*, 15 Barb. 485; *Keator v. Dimmick*, 46 Id. 158.

If the land had been conveyed directly to Jacob Bear, by Holmes, and he had conveyed to his children at the time Holmes made his deed, the widow would not have been entitled to dower, for the reason that she was a non-resident of the State: How. Stat. § 5753; *Ligare v. Semple*, 32 Mich. 443–5; and if it should be contended that the conveyance from Holmes to the children of Jacob Bear will in equity be considered, and subjected to the same rules of law, as a conveyance to Jacob Bear, and from him to his children—which is the most that can be claimed—the authority above cited disposes of complainant's case.

Defendant John Woodworth, the present owner, was an innocent purchaser of the land, having no knowledge of complainant's claim: Kerr on Frauds, 312–13; *Loomis v. Brush*, 36 Mich. 45–8; *Holcomb v. Mosher*, 50 Id. 254–8.

CHAMPLIN, J. On the ninth of August, 1883, complainant filed her bill of complaint in the circuit court for the county of Eaton, alleging therein that on the twentieth of April, 1858, she was married to one Jacob Bear, in the state of Ohio, and lived and cohabited with him as his wife until his death, which occurred in Eaton county, Michigan, on the eighteenth day of December, 1882; that at the time of her marriage she and said Jacob Bear resided in Jackson township, Seneca county, Ohio, where they continued to reside until the spring of the year 1882, when they removed to Eaton county; that at the time of their marriage said Jacob Bear owned a farm of seventy acres in Jackson, and had some personal property, but was indebted to some extent,

and was worth not to exceed $1,000; that she then owned forty acres of land adjoining the farm of her husband, which was at that time partly cleared up and under cultivation.

That at the time of the marriage said Jacob Bear was a widower, and had six children, whose names were Matilda Stahl, Mary Bear, since married, and whose name is now Mary Culp, Joseph Bear, Anson Bear, Henry Bear, and Louisa Bear, whose name is now Louisa Thomas; that the youngest of said children was but four years of age at the time of the marriage, and five of them were in the family after said marriage, and that she cared for and attended said children until they grew up and went away from home.

That she was, at the time of the marriage, a widow, and had children, two of whom were a part of her family, one of whom was four years of age and the other six; that Jacob had the use of her forty acres, and that by their joint efforts the husband's farm was greatly improved and enhanced in value, and in 1882 was worth about $6,000.

That in the winter or spring of 1882 said Jacob Bear desired her to join him in a deed of his farm, giving as a reason for a sale that he did not wish to do any more hard labor; that he would buy a small place in or near the city of Fostoria, Ohio, and that they would loan their money, and live much more comfortable than having the care of a farm, and she was thereby induced to sign a deed conveying said farm away, and for which said Jacob Bear received $80 an acre or upward, amounting to about the sum of $6,000; but that, instead of buying any place in or near Fostoria, and doing as he had stated to her he intended, or making any effort in the least to do so, he, in about two days after said sale, started for the State of Michigan, and in about two or three weeks thereafter returned to the state of Ohio, and informed her that he had bought a farm in Michigan, and was going to remove to that State, and they did remove some time in the month of April, 1882, and went to live, in May following, upon the farm in Eaton county, which he had bought with the proceeds of his Ohio farm, and which consisted of the following described lands: The N. W.

fractional ¼ of section 5, in town 3 N., range 4 W., excepting the east 9.28 acres.

That in August, 1882, she returned to Ohio, and there learned that the farm had not been deeded to her husband, but that he had caused the same to be conveyed to his children, and had done so for the purpose of cutting complainant off forever from having any right of dower or interest therein ; that on her return home to Eaton county she informed her husband of what she had heard concerning the conveyance to his children, whereupon he positively denied that such was the case, but that the same was deeded to himself ; that Anson Bear, who was then working the farm on shares, positively denied to her that the deed ran to the children, and she did not learn differently until after the death of her husband, which occurred on December 18, 1882.

That soon after the death of her husband she was informed by some of the children of Jacob Bear that she had no right upon said place, or interest therein ; and upon investigation she charges that Jacob Bear, at the time he purchased the premises of Horatio N. Holmes, caused the deed thereof to be made to his said six children direct from said Holmes ; that none of said children paid any part of the consideration of said purchase, and that her husband paid the whole of the consideration and purchase price of said land out of the proceeds from the sale of the Ohio farm, and before the delivery of the deed to the children they executed back to him certain deeds purporting to convey to him a life-estate in said lands.

That about the thirtieth day of March, 1883, defendants Anson Bear, Joseph Bear, and Henry Bear, also Mary Culp, Louisa Thomas, and Matilda Stahl, executed a warranty deed of said lands to John Woodworth ; that the consideration named in such deed is $5,100, and the title now appears to be in him, but on information and belief she charges that said Woodworth well knew her rights in the land described in the deed to him ; that he has never taken possession or exercised any rights of ownership of said land, but the premises have all the time, since the death of Jacob Bear, been

in the possession of his six children, and now is in the possession of Anson Bear, whom she believes to be the owner thereof; that the deed to Woodworth was made for the sole and only purpose of defeating her out of her dower in such lands, of which Woodworth was knowing at the time, and she, on belief, charges that Woodworth, at the time of the delivery of the deed to him, executed a deed or other conveyance back to said parties, or some of them, or made some other agreement for such conveyance.

She states that these lands were the only lands owned by her husband at the time of his death; that no provision was ever made by her husband for her; that she has never had out of his personal estate to exceed the sum of $125 since his death, and no support therefrom; that when her husband sold his property in Ohio, about nine months before his death, he was worth at least $6,000; that, supposing her said husband would deal fairly with her, and not attempt to defeat her just rights in the property they had so jointly accumulated, she had used much of her own property to assist her own children, whom she had been impelled to require to shift for themselves in early life while her husband had the use of her said property; that she now has but little means left, is lame from the effect of a broken limb, so that she is compelled to walk with a cane, and is liable to become dependent upon her friends and relatives for support.

That the procuring of the deed from said Horatio N. Holmes to his children and taking back a life-estate, as hereinbefore stated, was but a testamentary act on the part of Jacob Bear, and could in nowise defeat complainant of her dower in said land; that the parties defendant refuse to recognize her right to dower in the premises described; and she prays that the deed from the heirs of Jacob Bear to John Woodworth may be set aside, and declared void as to complainant, and that she may, by a proper decree, be declared to be entitled to a dower estate in the lands described; that the defendants be required to yield up to her her dower interest, and to account to her for her one-third part of the rents and

profits of the lands since her husband's death; that, if neces-
sary, the deed from Horatio N. Holmes to said children of
Jacob Bear may be set aside, or so reformed as by such decree
she may be shown to have a clear and legal title to her dower;
and, if necessary, a commission may be issued for the pur-
pose of assigning and setting out her dower, or third part of
said real estate; and for other and further relief.

Defendant Woodworth filed a separate answer, in which
he admits the sale and conveyance on the thirtieth of March,
1883, for the consideration mentioned in the deed, of $5,100,
and says that he actually paid to said grantors of said land
the consideration named in said deed, and that he bought the
same in good faith, as an innocent purchaser, for his own use
and benefit, and without any knowledge or notice of any
claim of dower on the part of complainant in or to the land,
or of any right or claim of right to the land, and without
any notice or knowledge of any understanding or agreement
between complainant and the said Jacob Bear, deceased, in
regard to this or any other land; that the legal title is still
vested in him and held by him, and he has never executed
any conveyance thereof, or any written agreement to con-
vey said land, to any one, nor has he ever received any pay
or compensation for said land from any one.

But he says that there is a verbal understanding in regard
to the sale of said land to one of the defendants, Anson Bear,
who is a relative by marriage, which understanding he may
at some future time carry out on his part, but as yet it has
no legal or valid existence, and which he submits is a private
matter between himself and said Anson Bear, and entirely
irrelevant and immaterial to this cause; that at the time of
said purchase there was no understanding whatever that any
of said defendants should retain any right, title, or interest,
equitable or otherwise, in and to said land, or that he should
be bound to sell or convey the same back to any of them, or
that by his taking said conveyance it would place the title
beyond the reach of complainant's claim of dower.

Matilda Stahl, Mary Culp, Joseph Bear, Henry Bear, An-
son Bear, and Louisa Thomas answered jointly and severally,

admitting the marriage, and the ownership of the land in Ohio; also admit complainant's ownership of 40 acres, but on information and belief say that she was heavily indebted on the same, and in danger of losing it, and that Jacob Bear, immediately after the marriage, paid off the incumbrance with the understanding that she would deed the same to him; that this was done, and Jacob Bear occupied and cultivated and improved it until some years afterwards, when trouble grew up in the family, and it was then agreed between complainant and Jacob Bear that they should separate and live apart from each other, and that said Jacob Bear deeded back the 40 acres to complainant, with the express understanding that it was to be in full satisfaction of her dower in and to all the property owned by the said Jacob Bear, and that she then agreed to release her right of dower in and to all the property then owned by the said Jacob Bear whenever he should desire, and that the execution of the instrument by complainant, by which she released her dower in and to the 70 acres, was only the carrying out of the arrangement before entered into, and that complainant had no interest in and to the proceeds from said farm; that when the 40 acres was deeded to Jacob Bear it was wild and uncultivated, except a small clearing, and when he deeded it back it was in a high state of cultivation, and worth at least $2,000.

On information and belief they say that nothing was said, when they conveyed the 70 acres, about buying a small place in Fostoria, in Ohio, and loaning money, but they submit that if such was the fact and understanding she would have gained nothing thereby; but they deny positively that such was the arrangement and understanding between complainant and Jacob Bear.

They admit the purchase of the premises in question, by Jacob Bear, of Horatio N. Holmes, and that it was deeded direct to them, and that they conveyed a life-estate therein to Jacob Bear; but they deny ever having any talk with complainant in regard to the title to said land, or as to who held the title, previous to the death of said Jacob Bear, on the eighteenth day of December, 1882.

They admit the conveyance to Woodworth, and deny that it was without consideration; aver that the consideration named in the deed actually passed between the parties, and was paid to them by said Woodworth; on information and belief say that Woodworth was wholly ignorant of the claim now made by complainant.

Anson admits being in possession of the land; denies being the owner thereof; says that John Woodworth is the owner.

They deny that the sale to Woodworth was for the purpose of defeating or defrauding complainant; say that the sale was made in the utmost good faith. They say that after the death of Jacob Bear complainant sold the 40 acres deeded to her by Jacob Bear in satisfaction of her dower rights, for $2,000; that neither at the time of the death of Jacob Bear, nor from thence until sometime after the sale of said land to Woodworth, and just a short time before the filing of her bill, did complainant make any claim to a right of dower in said lands, and she never pretended to have any interest therein, and that she is now estopped from setting up any claim which would affect the rights of an innocent purchaser.

The cause was heard below upon pleadings and proofs, and a decree rendered in favor of complainant. Defendants appeal.

Defendants' counsel contend that there are but three questions involved in the case, viz.:

1. Was complainant's husband, Jacob Bear, at any time during the marriage, seized of an estate of inheritance in the lands in question?

2. Was Jacob Bear, the husband of the complainant, or any person acting for or on his behalf, guilty of fraud which resulted in depriving the complainant of her dower in this land, or of such a fraud as a court of law or equity would, in order to correct it, set aside the conveyance of this land to these defendants so far as it affected her dower?

3. If the conclusion arrived at in answering these questions will not warrant a decree for the complainant, then was Jacob Bear possessed of such an *equitable* title as will warrant the court in awarding dower to the complainant?

We need not consider the first nor the third of these pro-

positions, as the theory of complainant's bill, and her proofs, are based upon the second proposition.

Dower has always been favored in both courts of law and equity. The act must be unambiguous, and the intention plain, that will induce courts to declare that the right of the wife or widow to dower is barred.

In this case there is no question respecting the right of complainant, as the wife of Jacob Bear, to an inchoate right of dower in the lands owned by Jacob Bear in Ohio, previous to the sale thereof.

The important question is whether that sale was brought about, and his wife induced to sign the deed relinquishing her right to dower in those lands, by false representations or artifice of Jacob Bear that he was to invest the proceeds of that farm in other lands in or near Fostoria, Ohio, and with the secret intention of coming to Michigan and purchasing land, and so placing the title as to prevent complainant from having any right of dower therein.

In view of the whole testimony we are led to the conclusion that the sale of the Ohio farm, and the purchase of the land in question in the manner disclosed by the record, did operate as a fraud upon the rights of complainant, and was designed to deprive her of her dower interest in both the Ohio and Michigan lands. That the transaction, as carried out, had that result, cannot be denied; and it is reasonable to suppose that the parties intended the consequences which the result produced.

The evidence supports the charges contained in the bill of complaint. It shows that he obtained the signature of his wife to the deed of the farm in Ohio under representations that induced the belief that her husband was going to Fostoria, or near there, to live ; that within a couple of days after the sale was consummated he left for Michigan, without acquainting his wife of his intention to go there, and upon that occasion the land was purchased from Holmes and the deed executed to the children.

From what is said by Anson Bear in his testimony, the scheme to sell the land in Ohio and purchase the land in

question must have been agreed upon before the sale of the Ohio land. He testifies that there was a land contract for the purchase of the land from Holmes which preceded the deed. The contract is not produced, nor its date or terms proved, but enough appears to show that the purchase of the Michigan land did not originate in the visit which Jacob Bear first made after the sale of the Ohio farm.

If the object was not to defraud the complainant of her dower in the land purchased and paid for by Jacob Bear, why was the deed executed to the children of Jacob Bear, and a life lease for his life alone taken back? In this manner no provision whatever was made for his wife after his death if she should survive him.

We regard it as no answer for these children of Jacob Bear to say that their father conveyed to her the land the complainant once owned, and which she had conveyed to him, and of which he had the use for 14 years. He gave her back her own, and it could not constitute a consideration for her release of dower to lands of which he was seized.

It is also said that complainant and Jacob Bear were non-residents of Michigan when these lands were conveyed to the children of Jacob Bear, and that non-resident wives are not entitled to dower in lands in this State conveyed by the husband while a non-resident. *Ligare v. Semple*, 32 Mich. 443.

Such would be the law in cases free from fraud; but where the purchase and sale of land in Michigan is a part of the scheme to perpetrate a fraud upon the wife for the purpose of depriving her of her dower right, the principles laid down in the case cited have no application.

We do not, under the testimony in this case, regard defend-ant Woodworth as a purchaser in good faith, without notice of complainant's rights, and we think that his rights as purchaser must be subordinated to complainant's, as widow of Jacob Bear, to dower in the lands described in the bill.

The decree of the circuit court is affirmed, with costs, and the cause must be remanded to that court for further proceedings in accordance therewith.

The other Justices concurred.