**In re Kathleen M. WHEELER, Debtor.**

**United States of America, Defendant/Appellant,**

v.

**Elizabeth Chalmers, Trustee, Plaintiff/Appellee.**

No. 1:99–cv–308.
Bankruptcy No. HG–94–80671.
Adversary No. 96–8187.

United States District Court, W.D. Michigan, Southern Division.

March 27, 2000.

Kathleen M. Wheeler, Debtor, Lake Leelanau, MI, Pro se.

W. Francesca Ferguson, U.S. Attorney's Office, Grand Rapids, MI, Michael W. Davis, U.S. Department of Justice, Tax Division (1), Washington, DC, for Defendant/Appellant.

Jeffrey Alan Moyer, Donovan, Love & Twinney, PLC, Office of the U.S. Trustee, Grand Rapids, MI, for Plaintiff/Appellee.

## OPINION AND ORDER REVERSING DECISION OF THE BANKRUPTCY COURT

MILES, Senior District Judge.

This matter is before the court on the appeal of the United States of America from a judgment of the United States Bankruptcy Court (the Honorable Laurence Howard) requiring the United States to turnover to the trustee $6,000 representing the debtor's dower interest in certain real estate. For the reasons set forth below, the court REVERSES the decision of the bankruptcy court.

### FACTS

This case arises from the voluntary Chapter 7 bankruptcy petition filed by Kathleen Wheeler (the "debtor" or "Kathleen") on February 17, 1994. In June, 1996, Elizabeth Chalmers, the duly appointed Chapter 7 trustee, initiated this adversary proceeding by filing a "Complaint to Require Turn Over of Property." The complaint arises from a post-petition payoff of the balance of a land contract executed by the debtor's husband, Forrest N. Wheeler (or "Forrest").[1]

The essential facts are not in dispute. The real property in question is located at 5900 Hall Street, S.E. in Grand Rapids, Michigan. At one time, Forrest held the property in his own name. However, on July 21, 1986, Forrest executed a quitclaim deed transferring the property to joint ownership by himself and Kathleen, as husband and wife. The deed, which recites a lack of consideration for the transfer, was recorded on July 29, 1986. On August 10, 1988, Kathleen and Forrest executed a quitclaim deed which conveyed

---

1. In her first amended complaint filed in November, 1996, the trustee also sought to avoid the second transfer by quitclaim deed, pursuant to 11 U.S.C. § 544. However, the bankruptcy court denied this request for relief and the trustee has not filed a cross-appeal raising this issue.

the property back to Forrest in his individual capacity. This deed also recites that the transaction was made for "no consideration."

On December 31, 1989, Forrest sold the property on land contract to two unrelated third parties. On January 27, 1995, Forrest executed a warranty deed conveying title to the property to the purchasers. Although the warranty deed recites Forrest's status as a "married man," Kathleen, who by this time had filed her Chapter 7 petition, did not sign the deed, nor did the trustee. At the closing of the land contract sale, the title company handling the transaction placed the proceeds from the sale—$40,139.84—in escrow, in Forrest's name.

On September 11, 1995, the Internal Revenue Service ("IRS") issued a notice of levy to the title company in the amount of $28,740.20, representing the unpaid, post-petition joint 1994 federal income tax liability of Kathleen and Forrest Wheeler. Based on the notice of levy, the title company issued a check to the IRS for the full amount it claimed. The title company also released to Forrest the sum of $11,399.64, which was what remained in the escrow account after payment to the IRS.

The trustee's complaint alleges that upon closing of the land contract pay-off, one-half of the proceeds—or $ 20,069,92—represented property of the bankruptcy estate. The complaint also alleges that the levy resulted in the IRS obtaining possession of funds representing property of the bankruptcy estate. Based on these allegations, the trustee sought to have the IRS turn over to her, pursuant to 11 U.S.C. § 542, the sum of $20,069.92, or half of the

$28,740.20 which the IRS had received from the escrow account.

■ The trustee subsequently moved for summary judgment, arguing that the August 10, 1988 conveyance by quitclaim deed effectively transformed ownership of the property from a tenancy of the entireties to a tenancy in common. Based on this argument, the trustee reasoned that she became a tenant in common with Forrest as of the date Kathleen filed her petition. In a bench ruling on October 1, 1996, the bankruptcy court correctly rejected this argument, concluding that the transfer by Kathleen was effective to terminate the tenancy by the entirety and to vest full title to the property in Forrest.[2] The bankruptcy court also concluded, however, that Kathleen "may have certain inchoate dower rights" which were not barred by the conveyance; therefore, the court concluded, it was solely this "dower right" which would have become property of Kathleen's Chapter 7 estate.[3]

After additional briefing was filed by the parties addressing certain issues raised by the amended pleadings, on May 8, 1998 the bankruptcy court issued an opinion in which posed the following query: "Are the Funds Sought Property of the Estate?" Concluding, among other things, that this issue was "inextricably intertwined with the issue of the debtor's dower rights" and that such rights constituted real property rights defined by state law, the bankruptcy court nonetheless expressly saved resolution of this question, and the question of the "extent and valuation" of the dower rights, for a later day.

In a subsequent bench ruling on cross-motions for summary judgment held on July 28, 1998, the bankruptcy court once

---

**2.** A Sixth Circuit panel has since held that upon execution of a quitclaim deed on real property owned by a husband and wife as tenants by the entirety, conveying the property solely to the wife, no tenancy in common was created; instead, the wife was vested with "full and complete title." *Craft v. United States*, 140 F.3d 638, 644 (6th Cir.1998) (applying Michigan law).

**3.** In its October, 1996 ruling, the bankruptcy court did not address the issue of whether the trustee could, under § 544, avoid the second transfer by quitclaim deed; this issue was not raised by the trustee's motion on which the court ruled.

again addressed the issue of whether the proceeds of the sale of the property which were levied upon by the IRS were the property of the bankruptcy estate. Noting that it's October, 1996 ruling had held that the debtor had a dower interest in the real property at the time of her Chapter 7 filing, the bankruptcy court reaffirmed this ruling, but concluded that the extent and value of the debtor's dower interest were questions of fact on which summary judgment was inappropriate. The court further indicated that it would schedule a hearing on the issue of the valuation of the dower interest.

Subsequently, the parties entered into a stipulation in which they agreed that *if* the debtor possessed a dower interest in the real property, the value of that interest on the Chapter 7 filing date was $6,000. Accordingly, on March 3, 1999, the bankruptcy court entered a final judgment in favor of the trustee in the stipulated amount. The United States filed its notice of appeal on March 15, 1999.

### TIMELINESS OF APPEAL

■ In her brief on appeal,[4] the trustee argues that the court must at the outset address the threshold issue of whether it has appellate jurisdiction to review the issues raised by the United States' appeal.[5] More specifically, the trustee argues that because the bankruptcy court's July 28, 1998 ruling was a final decision on the merits of these issues, the United States' appeal is untimely and the court lacks jurisdiction over it.

The trustee's argument has no merit. Title 28 U.S.C. § 158(a)(1) provides, in relevant part, that the district courts "shall have jurisdiction to hear appeals ... from final judgments, orders, and decrees[.]" Section 158(a)(1) further provides that district court review of interlocutory orders

and decrees of bankruptcy judges shall only be had "with leave of the court." The bankruptcy court's July, 1998 ruling was not final, but interlocutory, for it clearly failed to dispose of the issue of the value of the debtor's dower rights. *See In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) ("In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally resolved, rather than the entire bankruptcy litigation ... the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do"). A judgment requiring turnover could not have been entered in the absence of a determination of the amount which the United States was required to turn over. Once the bankruptcy court did enter such a judgment, the United States filed a timely appeal under Bankr.Rule 8002. This court therefore has jurisdiction over the issues raised therein.

### ANALYSIS

■ For purposes of this appeal, the United States does not contest the holding of the bankruptcy court that the debtor, Kathleen Wheeler, had a dower interest in the subject property on the date that she filed her Chapter 7 petition. Brief for the Appellant, at 2. What the United States does argue, however, is that the bankruptcy court erred when it held that the *proceeds* from the sale of the property by Forrest Wheeler (1) represented that interest, and (2) were traceable in the hands of the IRS and therefore subject to turnover. The parties agree that to the extent that this appeal presents strictly a legal issue, this court must review the bankruptcy court's conclusions of law *de novo. See In re Baker & Getty Financial Serv., Inc.*,

---

4. The court observes that the trustee erroneously titled her brief as "Brief for the Appellant," even though she is clearly the appellee in this matter. (Docket no. 6, filed June 2, 1999).

5. The requirement for a timely filed notice of appeal under the Bankruptcy Rules is jurisdictional, and cannot be waived. *In re LBL Sports Center, Inc.*, 684 F.2d 410, 412 (6th Cir.1982) (interpreting former Rule 802(a)).

106 F.3d 1255, 1259 (6th Cir.1997) (district court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law *de novo* ). In its review, this court may consider any issue presented by the record even if the issue was not presented to the bankruptcy court. *Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1379 (9th Cir.1985).

■ "It is well established that the burden of proof is on the party seeking turnover of property of the estate[.]" *Matter of Alofs Mfg. Co.,* 209 B.R. 83, 89–90 (Bkrtcy.W.D.Mich.1997). Therefore, the trustee must prove each element of her turnover action under section 542 by a preponderance of the evidence in the record. *Id.* at 91. One of these elements requires the trustee to prove that the property in question is in the "possession custody, or control of an entity," *id.,* here, the United States. In addition, fundamental to the concept of turnover under § 542(a) is that the asset to be turned over must be property of the debtor's bankruptcy estate as defined by the Bankruptcy Code. *In re Greer,* 242 B.R. 389, 393 (Bkrtcy.N.D.Ohio 1999).

■ In order to prevail on the request for a turnover, the trustee was required to prove, *inter alia,* that the subject property could be used in accordance with 11 U.S.C. § 363. *See* 11 U.S.C. § 542(a) (providing for turnover of property that the trustee may use, sell, or lease under section 363). Section 363(b)(1) permits the trustee, after notice and a hearing, to "use, sell or lease, other than in the ordinary course of business, *property of the estate.*" (emphasis supplied). Therefore, the bankruptcy court could not order the turnover of property without first determining whether it was property of the estate. Ordering the turnover without first making the substantive determination regarding whether the proceeds were property of the bankruptcy estate would be akin to putting the cart before the horse.

■ Property of the estate is defined under 11 U.S.C. § 541 as follows:

(a) The commencement of a case under section 3401, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

"This definition is meant to be very broad and includes practically every conceivable interest that a debtor may have in property." *In re Greer,* 242 B.R. at 393 (citations omitted). However, "property of the estate is generally limited to legal or equitable interests in property that were held by the debtor prior to, and up until the time of the filing of the bankruptcy petition." *Id.* In addition,

Under § 541(a) the determination of whether a debtor's interest in property constitutes 'property of the estate' is a question of federal law. However, unless there is a strong countervailing federal interest, the actual existence of a debtor's right in property, including its nature and scope, is determined by looking at state law....

*Id.* at 394 (citations omitted). Therefore, the trustee must demonstrate that the property in question—the debtor's dower rights—is recognized as a property interest under state law. The value of the dower is also to be determined in accordance with the rules applied under state law. *In re Rosing,* 56 F.2d 1049, 1050 (N.D.Ohio 1931).

■ Under Michigan law, "a widow is statutorily entitled to dower, or the use during her natural life, of one-third of all lands whereof her husband was seized of an inheritable estate at any time during the marriage unless she is lawfully barred." *Matter of Estate of Stroh,* 151 Mich.App. 513, 392 N.W.2d 192, 194 (1986); M.C.L. § 558.1. Michigan's laws "closely guard the right of dower," recognizing that

"a husband may not bargain away his wife's dower interest." *M & D Robinson Co. v. Dunitz*, 12 Mich.App. 5, 162 N.W.2d 318, 321 (1968). *See also Delaney v. Manshum*, 146 Mich. 525, 528, 109 N.W. 1051 (1906) ("No contract of sale or conveyance made by the husband without the signature of the wife will operate to deprive her of her dower"); *Matter of Estate of Stroh*, 392 N.W.2d at 194 ("Notwithstanding a conveyance by a husband in which the wife did not join, the husband is considered so seized of the premises as to entitle the wife to dower").

▮▮▮ A wife herself, however, may bar her right to dower. *Dunitz*, 162 N.W.2d at 321. In order to be deemed to have barred her right of dower, the wife's act "must be unambiguous, and the intention plain, that will induce courts to declare that the right of the wife or widow to dower is barred." *Bear v. Stahl*, 61 Mich. 203, 214, 28 N.W. 69 (1886); *see also* M.C.L. § 558.13 (married woman may bar her right of dower by deed, "provided the intent to bar her right of dower shall be expressed in said deed"). "A contract by the wife, releasing her right of dower to the husband, is valid." *Chittock v. Chittock*, 101 Mich. 367, 59 N.W. 655, 656 (1894); *Dakin v. Dakin*, 97 Mich. 284, 56 N.W. 562, 563 (1893) ("a contract whereby a wife releases her dower to her husband, in consideration of the conveyance to her of property, from him, is valid"); *Wright v. Wright*, 79 Mich. 527, 44 N.W. 944, 945 (1890) ("there is no legal objection to an arrangement between husband and wife, for a fair consideration, to extinguish her right of dower ... But no court can sustain such an arrangement unless it is a fair and voluntary one").

▮▮▮ Under Michigan law, "[t]he estate of dower involves three essentials: Marriage, seisin of the husband during coverture, and death of the husband with survivorship of the wife." *Cummings v. Schreur*, 239 Mich. 178, 214 N.W. 199 (1927). The right of dower is thus deemed "inchoate," becoming "consummate" in the wife only upon the death of her husband. *Id.* at 200. "In its initial state, as an inchoate right, it is an expectant contingency," even if it is a well-protected one. *Id.* at 199.

Courts have recognized that there is some difficulty in determining whether a contingent right such as dower should cause real property to be included as property of the estate. For example, in *In re Conrad*, 12 B.R. 32, 34 (Bankr.N.D.Ohio 1981), the court held that even though the debtor-husband's inchoate right of dower was an equitable interest in real estate owned by his wife, the husband's interest was "too tenuous for [the] Court to find that the real estate involved should be included as property of the estate[.]"[6] In contrast, the court in *In re Lambert*, 57 B.R. 710, 713 (Bankr.N.D.Ohio 1986), concluded that under Ohio law, the debtor's dower interest did constitute a recognizable interest in the bankruptcy estate. The court observed that the dower interest, though inchoate, could be measured when the real estate is transferred without a relinquishment of the dower rights. *Id.*

Whether the right is inchoate or contingent, the fact remains that Michigan law recognizes dower as a right of "appreciable and legal value," something worthy and sufficiently tangible to be guarded and protected. *Greiner v. Klein*, 28 Mich. 12, 1873 WL 5904, at *3 (1873). However, for a number of reasons, that does not necessarily mean that the property in question in this adversary proceeding, which is in the "possession custody, or control" of the United States, represents the debtor's dower interest in the real estate sold by her husband.

---

**6.** The court in *Conrad* also concluded that even though the real estate owned by the wife was not an asset of the bankruptcy estate, "equity demands that if the proposed Plan of arrangement is to provide for payments to creditors for which this real estate is liable, then this real estate should make a contribution to the Plan[.]" 12 B.R. at 34.

The first of these reasons is that Michigan's statutes recognize that a right of dower may be barred, as provided by M.C.L. § 558.13, or as provided in M.C.L. § 700.210 (repealed effective April 1, 2000). The state's statutes also recognized that dower rights may be waived. For instance, M.C.L. § 700.291 (also repealed effective April 1, 2000) provides that "[t]he rights of the surviving spouse . . . to dower . . . may be waived . . . by a written contract, agreement, or waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of 'all rights' in the property . . . is a waiver by the female spouse of all rights to dower[.]" The debtor here, by executing a quitclaim deed, may well have intended to waive her inchoate right of dower, even though the deed which she executed recited no consideration. *See Watkins v. Minor*, 214 Mich. 380, 183 N.W. 186, 190 (1921) (indicating that no authority holds that there must be independent consideration moving directly to the wife). The debtor could well have received some benefit from the transaction; there's certainly been no attempt to show that the execution was involuntary or procured through fraud by her husband. *See Wright v. Wright*, 79 Mich. 527, 44 N.W. 944, 945 (1890) ("It has been settled in this state that there is no legal objection to an arrangement between husband and wife, for a fair consideration, to extinguish her right of dower. . . . But no court can sustain such an arrangement unless it is a fair and voluntary one"). Under the circumstances, the quitclaim deed could operate as a bar in equity. *Rhoades v. Davis*, 51 Mich. 306, 16 N.W. 659, 661 (1883).

However, the United States has apparently chosen not to contest the bankruptcy court's holding that Kathleen had a dower interest in the real estate at the time she filed her petition. So, let us assume, for the moment, that the quitclaim deed was void. Another reason why the proceeds in the possession of the United States might not necessarily represent the debtor's dower rights is, as the United States has noted, that any dower interest which the debtor might have had in the property remains with that property to date, in the hands of the third party purchasers. As noted above, no unilateral actions of her husband could operate to terminate the debtor's dower rights. Moreover, the warranty deed by which Forrest Wheeler transferred the property recited his status as a married man, although there is no indication that his wife joined in the conveyance. This would have been sufficient to have put the purchasers on inquiry, which would undoubtedly have led to actual notice of Kathleen's ineffective quitclaim deed—and the fact that it was unrecorded. Under such circumstances, Michigan law may well hold that the purchasers took their title to the real property subject to Kathleen's dower interest. That law provides that

> While the wife's right to dower during the lifetime of her husband is inchoate, or, as it is sometimes expressed, 'in expectancy,' a perfect title to lands owned by him cannot be given without the barring of such right. This she may do by joining in the conveyance with her husband. . . .

*Gluc v. Klein*, 226 Mich. 175, 197 N.W. 691, 692 (1924).[7] If the purchasers, who are not parties to this proceeding, are holding the real property which is subject to the dower interest, the United States could not also be holding any proceeds which represent that interest.

As the trustee has noted, Michigan law does contain a provision providing for the award of money judgment in lieu of dower. Specifically, M.C.L. § 600.2933(2), provides as follows:

---

7. "Michigan has adopted what is frequently known as a 'race-notice' statute: the first interest holder to record takes priority, unless that individual has notice of a prior unrecord- ed interest." *First of America Bank—West Michigan v. Alt*, 848 F.Supp. 1343, 1347 (W.D.Mich.1993); *see also* M.C.L. § 565.29.

(2) **Award of money in lieu.** In any action commenced by any widow for the recovery of dower in lands which were aliened by her husband in his lifetime, if dower cannot be assigned in the land by metes and bounds without injustice or manifest injury to the widow or to the owners or persons in possession of the land or some one of them, the court having cognizance of the matter may award a sum of money in lieu of dower to be paid to the widow, or may assign to her, as a tenant in common, a just proportion of the rents, issues, and profits of the lands. In all cases the court shall consider the true value of the lands at the time of their alienation by the husband, and of the probable duration of the life of the doweress at the time the sum of money is awarded or the rents, issues, and profits are assigned to her.

The United States is not challenging the authority of the bankruptcy court to award, under certain circumstances, "a sum of money in lieu of dower."[8] However, the United States once again emphasizes that under Michigan law, Forrest was unable to unilaterally convey his wife's dower interest by executing in a conveyance in which she did not join. Therefore, it would seem that any action filed by a "widow" under § 600.2933(2) should be brought against the current owners of the property, and not the United States, which merely holds proceeds of a sale which did not convey the debtor's rights. Another stumbling block to the trustee's reliance on § 600.2933(2) is its language providing for an award of money in lieu of dower only where dower cannot otherwise be assigned "without injustice or manifest injury to the widow or to the owners or persons in possession of the land or some one of them[.]" As the United States has noted, the bankruptcy court made no factual findings in this regard; nor could it have done

so, for we know nothing about the purchasers, and no evidence in the record supports a finding of "injustice or manifest injury" to either them or Kathleen Wheeler.

But let us make another assumption—that the sale of the real property to the purchasers by her husband did operate to "liquidate" Kathleen Wheeler's dower interest, or that the bankruptcy court could have awarded her a sum of money in lieu of dower. Even under these circumstances, it is not established that the funds in the possession of the United States represent Kathleen's dower interest. After the closing of the land contract sale, over $40,000 was placed in escrow as proceeds of the sale. The IRS' notice of levy was directed to only $28,740.20 of the escrowed funds; therefore, even after levy, an amount in excess of $11,000 should have remained in escrow—an amount more than sufficient to satisfy Kathleen's dower interest, the value of which has been stipulated to be $6,000. But where did the remaining escrowed funds go? To Kathleen's husband.

Michigan law, to which this court must refer, suggests that the sale proceeds in the hands of the United States should not be deemed to represent the debtor's dower interest. M.C.R. 3.403 addresses the compensation to be provided "[w]hen premises that include a dower interest or life estate are sold[.]" This rule provides as follows:

**(D) Distribution of Proceeds of Sale.**

(1) When premises that include a dower interest or life estate are sold, the owner of the dower interest or life estate shall be compensated as provided in this subrule.

(a) Unless the owner consents to the alternative compensation provided in subrule (D)(1)(b), the court shall order that the following amount be invested in interest-bearing accounts insured by an agency of the United States government, with the interest

---

8. Notably, M.C.L. § 600.2933(2) expressly applies only in actions commenced "by any wid-

ow," which the debtor is not, so long as Forrest Wheeler still lives.

paid annually for life to the owner of the dower interest or life estate:

> (i) in the case of a dower interest, one-third of the proceeds of the sale of the premises or of the undivided share of the premises on which the claim of dower existed, after deduction of the owner's share of the expenses of the proceeding[.]

M.C.R. 3.403(D). Had the bankruptcy court treated the proceeds as envisioned by Michigan law, therefore, in excess of $13,000 of the $40,000 in escrow would have to have been deemed traceable to any dower interest which remained. However, M.C.R. § 3.403(D)(2) also provides for the protection of persons having encumbrances on the property, requiring the court to "order the distribution of the money held ... among the creditors having encumbrances, according to their priority." The bankruptcy court's decision below, however, makes no provision for the protection of the United States' tax lien on the property.

 Apart from the difficulty of tracing the funds held by the United States to Kathleen Wheeler's purported dower interest, given the evidence of record, something seems fundamentally wrong with what the bankruptcy court has done here. "As courts of equity, bankruptcy courts 'will look through the form to the substance of any particular transaction and may contrive new remedies where those in law are inadequate.'" *In re Madeline Marie Nursing Homes*, 694 F.2d 433, 436 (6th Cir.1982) (citation omitted). Similarly, Michigan law also provides that actions commenced by a widow for the recovery of dower in lands "are equitable in nature." M.C.L. § 600.2933(3). Little is known about the circumstances surrounding the transaction by which the debtor purportedly quitclaimed all interest in the property to her husband. Little more is known about the circumstances surrounding the transaction by which her husband purportedly conveyed all interest in the property to the "unrelated" third

parties, who aren't present here. However, given what is known—that the debtor quitclaimed all interest in the property to her husband, who in turn sold the property to third parties—no reason exists to conclude that the sales proceeds in the hands of the United States represent some dower interest remaining with the debtor. Such a conclusion does not only fail to be supported by all the legal principles discussed herein; it also fails to take into account ordinary considerations of fairness. It simply cannot stand.

 As a final matter, the United States has argued that in determining whether the sales proceeds which the IRS received were impressed with the debtor's dower interest, the bankruptcy court should have required the trustee to first "marshal" the assets to which it could look in order to satisfy her claims, in order to preserve recovery by the United States to the greatest extent possible. "Marshaling" is an equitable doctrine, which applies

> in cases in which a creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only,—as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another,—the former must seek satisfaction out of that fund which the latter cannot touch.

*In the Matter of Dealer Support Serv. Int'l, Inc.*, 73 B.R. 763, 764 (Bankr. E.D.Mich.1987) (citations omitted). Assuming that marshaling is a doctrine which could have been applied here, the trustee objects that the United States failed to argue or raise the issue in the bankruptcy court below. The United States argues that it had no opportunity to do so; the trustee sought summary the issue of marshaling.

The court finds no reason to remand this case for a determination of whether marshaling may be applied. If the bankruptcy court were to address the issue and reach

a conclusion that it does apply, the trustee would be forced to recover the proceeds representing the dower interest from Forrest. A conclusion that the doctrine did not apply, however, would leave the trustee in no better position than she is now in, having failed to establish a legal or equitable basis for turnover.

For this reason, and others described above, this court hereby reverses the decision of the bankruptcy court.